FILED BY_____ D.C.

JUL 1 5 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ – Civ

Jury Demand

Xuejun Makhsous
Lixing Yan
Lingfeng Duan
Zhizhen Yin
Lili Zhang
Ying Yu
Shuangquan Sun
Xiaofei Liu
Xuezheng Ding
Jiangman Chen
Jane Doe 1-99

       Plaintiffs

vs.

Nicholas Mastroianni, II
U.S. immigration fund, LLC
701 TSQ 1000 Funding, LLC
701 TSQ 1000 Funding GP, LLC
1568 Broadway Funding 100, LLC
1568 Broadway Funding 100 GP, LLC
Ronald Fieldstone

       Defendants

## COMPLAINT

We, Xuejun Makhsous, Lixing Yan, Lingfeng Duan, Zhizhen Yin, Lili Zhang, Ying Yu,

Shuangquan Sun, Xiaofei Liu, Xuezheng Ding and Jiangman Chen plaintiffs, pro se, in the above

styled cause, sue defendants Nicholas Mastroianni II, U.S. Immigration Fund LLC, 701 TSQ

1000 Funding LLC, 701 TSQ 1000 Funding GP LLC, 1568 Broadway Funding 100, LLC,1568

Broadway Funding 100 GP LLC (collectively, "Mastroianni") and Ronald Fieldstone and state:

## INTRODUCTION

1. All Plaintiffs, pro se, first bring this action to recover investment and fees paid to Defendants Mastroianni as result of fraud in the inducement, securities fraud, unconscionable adhesion contracts, and unjust enrichment against Defendants Mastroianni. Secondly Plaintiff Xuejun Makhsous ("Ma") bring this against Defendants Mastroianni and Ronald Fieldstone for interference of prospective and existing business relations.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity among the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. This Court is the proper Court because the wrongful conduct, in part, took place in this district.

4. The relief sought by Plaintiff is within jurisdiction of this Court to grant such relief.

## PARTIES

5. Xuejun Makhsous ("Ma") is a Chinese-English translator and EB-5 researcher. Ma has received assignment of certain interests of a current member of 701 TSQ 1000 Funding, LLC. Ma is a resident of Cook County, Illinois.

6. Lixing Yan is a citizen of People's Republic of China and resides in Shanghai, China.

7. Lingfeng Duan is a citizen of People's Republic of China and resides in Beijing, China.

8. Jiangman Chen is a citizen of People's Republic of China and resides in Guangdong, China

9. Shuangquan Sun is a citizen of People's Republic of China and resides in Beijing, Chin

10. Zhizhen Yin is a citizen of People's Republic of China and resides in Shanghai, China

11. Lili Zhang is a citizen of People's Republic of China and resides in Shandong, China

12. Ying Yu is a citizen of People's Republic of China and resides in Suzhou, China

13. Xuezheng Ding is a citizen of People's Republic of China and resides in Zhejiang, China.

14. Xiaofei Liu is a citizen of People's Republic of China and resides in Shanghai, China

15. Defendant Nicholas Mastroianni, II ("Mastroianni"), is a Florida resident and controls U.S. Immigration Fund LLC, 701 TSQ 1000 Funding LLC, 701 TSQ 1000 Funding GP LLC, 1568 Broadway Funding 100 LLC and 1568 Broadway Funding 100 GP LLC.

16. Defendant U.S. Immigration Fund, LLC, ("USIF") is a Delaware limited liability company whose controlling principal is Nicholas Mastroianni, II.

17. Defendant 701 TSQ 1000 Funding, LLC ("701 Fund"), is a Delaware limited liability company whose controlling principal is Nicholas Mastroianni, II.

18. Defendant 701 TSQ 1000 Funding GP, LLC, ("701 Manager") is a Delaware limited liability company whose controlling principal is Nicholas Mastroianni, II.

19. Defendant 1568 Broadway Funding 100, LLC, ("702 Fund") is a Delaware limited liability company whose controlling principal is Nicholas Mastroianni, II.

20. Defendant 1568 Broadway Funding 100 GP, LLC, ("702 Manager") is a Delaware limited liability company whose controlling principal is Nicholas Mastroianni, II.

21. None party Ying Ding (collectively "Qiaowai/GDOS"), is a US permanent resident who used to reside at 4552 Tuscany Dr, Plano TX at least between 2011 and 2018. Ying Ding controls a Chinese immigration consulting firm Qiaowai/GDOS that is the agent for Plaintiffs in 701 Fund and 702 Fund.

22. Ronald Fieldstone ("Fieldstone") is a securities attorney and partner of Saul Ewing Arnstein and Lehr. Ronald Fieldstone resides in Miami, Florida.

## FACTUAL ALLEGATIONS

### A. DEFENDANTS MASTROIANNI ARE INVESTMENT ADVISORS AND USE SECRET "FINDER'S AGREEMENT" TO SABOTAGE FIDUCIARY DUTIES QIAOWAI/GDOS OWED TO PLAINTIFFS

23. In October 2014 Fortune Magazine published an article titled "The tangled past of the hottest money-raiser in America's visa-for-sale program". This article detailed Defendant Mastroianni's records of bankruptcies, lawsuits and felonies prior to Mastroianni's new life as a money-raiser and fund manager of EB-5 investment from Chinese investors.

24. Between 2014 and 2016, Defendants Mastroianni raised over $377 million from over 754 foreign investors through the sale of securities in 701 Fund and 702 Fund. Both offerings were sponsored by Mastroianni's U.S. Immigration Fund - NY LLC (the "USIF Regional Center") pursuant to the EB-5 Program, which is administered by the United States Citizenship and Immigration Service ("USCIS") and provides an opportunity for foreign nationals to petition for United State residency if they make a qualified investment in a specified project that is determined to have created or preserved at least ten jobs for United States workers.

25. Defendants Mastroianni receive millions of management fees in addition to fees from the visa sponsorship through USIF Regional Center. A 2017 financial statement of 702 Fund shows Defendant Mastroianni/702 Manager received $13.66 million in management fee, and Defendant Mastroianni/ USIF Regional Center received $418,983 in sponsorship fee. Defendant Mastroianni/702 Manager paid substantial amount to its agent Qiaowai /GDOS. *See* Exhibit 1.

26. Securities and Exchange Commission ("SEC") has determined that EB-5 fund managers are investment advisors by virtue of the management of EB-5 Funds. In *SEC v. Muroff* 2017. As

such Defendants Mastroianni are investment advisers managing 701 Fund and 702 Fund. However, Defendants Mastroianni have not registered with SEC as investment advisers.

27. Both 701 Fund and 702 Fund provide financing for the redevelopment of a hotel, theatre and entertainment/retail space to be located at 1568 Broadway in New York, New York ("Broadway Development"). Both funds claim exemption from registration as an investment company under Section 3(c)(5)(C) of the Investment Company Act of 1940, as amended (the "Investment Company Act"). However, the assets of both funds are not fully secured, if any, with current value of Broadway Development because current asset of Broadway Development is used for collateral for senior loan of $1.125 billion provided Goldman Sachs Investment Bank since December 2018. Neither 701 Fund nor 702 Fund is registered as investment company.

28. Defendants Mastroianni admit that if it is later determined that the offerings did not fully comply with United States federal or state law, they may be required to refund certain investors' capital contributions, plus interest.

29. The assignor of certain rights to Plaintiff Ma, Lingfeng Duan, Shuangquan Sun, Zhizhen Yin, Lili Zhang, Ying Yu, Jiangman Chen, Xuezheng Ding and Xiaofei Liu ("701 Plaintiffs") are current or former investors in 701 Fund controlled by Defendant Mastroianni. Each of these Plaintiff contributed $500,000 investment to 701 Fund along with $50,000 in administrative fees between 2014 and 2015. In addition, each of these Plaintiffs paid about $12,000 to Qiaowai /GDOS for due diligence on 701 Fund.

30. Plaintiff Lixing Yan ("YAN") is an investor in 702 Fund. Yan contributed $500,000 to 702 Fund along with $52,000 in administrative fees in 2016. In addition, YAN paid about $12,000 to Qiaowai /GDOS for due diligence on 702 Fund.

31. Unknown to 701 Plaintiffs and YAN who contracted Qiaowai/GDOS as their agent Defendants Mastroianni had entered a confidential and exclusive Finder's Fee Agreement ("Fee Agreement") with GDOS to market securities issued by Defendants Mastroianni. Qiaowai/GDOS receives kickback payment for steering its clients to invest with Defendants Mastroianni. *See* Exhibit 2.

32. Defendants Mastroianni keep records of payment made to Qiaowai/GDOS related to each of Plaintiffs. Defendants Mastroianni refuse to disclose Fee Agreement and kickback payment records to Chinese investors. Defendants Mastroianni even deny that Qiaowai/GDOS is their marketing agent and insist that Qiaowai/GDOS is agent of Chinese investors like Plaintiffs.

33. With information and belief, Qiaowai/GDOS receives $40,000 in kickback commission from the $50,000 administrative fee each of Plaintiffs paid to 701 Fund or 702 Fund.  The Fee Agreement also provides that Qiaowai/GDOS receives about 1.75% to 2% interests annually on $500,000 investment each of Plaintiffs contributed to 701 Fund and 702 Fund.

34. With information and belief, Qiaowai/GDOS received millions of kickback payment from Defendants Mastroianni including about $3.89 million from 702 Fund in 2017 alone. Upon discovery request during an arbitration proceeding YAN filed against Defendants Mastroianni and 702 Fund in October 2019, Defendants finally provided a kickback payment history between 702 Fund and Qiaowai/GDOS that shows 702 Fund have paid $10,000 in January 2017 and $20,000 in February 2018 to Qiaowai/GDOS relative to YAN's investment in 702 Fund. *See* Exhibit 3.

35. Defendants Mastroianni and 702 Fund failed to provide "Finder's Fee Agreement" and payment history to YAN before YAN making the investment in 2016 and even when YAN filed a court action in New York in February 2019 for fraud and demanded return of his investment and fees.

36. Under the terms of "Finder's Agreement" Qiaowai /GDOS steered each of Plaintiffs to pay $15,000 legal fees and be represented by attorneys associated with Qiaowai /GDOS and Defendants Mastroianni. Such conflicts of interests were not disclosed to Plaintiffs. These attorneys never contracted Plaintiffs to advise them during investment process.

37. Defendant Mastroianni admits that Qiaowai/GDOS is Plaintiffs' agent with implied fiduciary duty owed to Plaintiffs.

38. Plaintiffs signed an agency agreement with Qiaowai/GDOS without any knowledge of Fee Agreement and kickback payment between Qiaowai/GDOS and Defendants Mastroianni.

39. At the instruction of Qiaowai/GDOS, Plaintiffs signed the signature pages of investment documents issued by 701 Fund and 702 Fund without receiving the complete investment documents including risk disclosures and the operating agreement of 701 Fund and 702 Fund. At instruction of Qiaowai/GDOS, Plaintiffs wired $500,000 along with administrative fees to to bank accounts controlled by Defendants Mastroianni.

40. In May 2018 after 701 Fund received full repayment from the first development 701 Fund financed, Defendant Mastroianni decided to redeploy the repayment to finance Broadway Development along with 702 Fund.

41. In May 2018 Defendant Mastroianni sought Consent of Amended Operating Agreement and Redeploy Repayment from 701 Fund members with collaboration with Qiaowai /GDOS. In the proposed Consent of Amended Operating Agreement and Redeploy Repayment, Defendants Mastroianni made Qiaowai/GDOS as co-manager of 701 Fund and Qiaowai/GDOS would earn 2% interest annually on $100 million asset of 701 Fund.

**B. FIELDSTONE SECRETLY WORKING WITH DEFENDANTS MASTROIANNI**

42. In May 2018 Some members of 701 Fund decided to withdraw their membership and investment during the redeployment process. With information and belief Qiaowai /GDOS arranged the introduction of Fieldstone to some of the withdrawing member of 701 Fund who sought to withdraw from 701 Fund and to terminate any relationship with 701 Fund.

43. Qiaowai /GDOS knew or should have known that Fieldstone has maintained working relationship with Defendants Mastroianni for many years.

44. When introducing himself, Fieldstone represented to 701 Fund Withdrawing Investors that he no longer presented conflict of interest claiming that he has not worked with Defendants Mastroianni for many years.

45. In fact, Fieldstone continues a working relationship with Defendants Mastroianni. On July 20 2018, without consent from 701 Plaintiffs, Fieldstone submitted a letter of support to New York Supreme Court in favor of Defendants Mastroianni in a legal action brought by 124 members of 701 Fund challenging the Consent of Amended Operating Agreement and Redeploy Repayment. *See* Exhibit 4.

46. Fieldstone failed to inform the 701 Fund Withdrawing Investors that just four years prior he authored a Private Placement Memorandum for one of Defendant Mastroianni's EB-5 fund that exempt them from registering as investment advisor by claiming that Qiaowai /GDOS would provide investment advice to Chinese investors. At time Fieldstone knew or should have known that Qiaowai /GDOS had made representation to Defendant Mastroianni that Qiaowai /GDOS doesn't provide any investment advice to its clients.

47. Initially 701 Plaintiff refused to vote on Consent of Amended Operating Agreement and Redeploy Repayment. On July 12 2018 Defendant Mastroianni notified 701 Plaintiffs that their votes became invalid because they failed to send their votes by July 5 as scheduled and they

were not eligible to receive refund of investment. However, Defendant Mastroianni gave extension to vote on Consent of Amended Operating Agreement and Redeploy Repayment only in favor of Defendant Mastroianni.

48. In contrast to attorney Litowtiz who insisted on members' right to withdraw and refund without voting, Fieldstone coerced 701 Plaintiffs to approve the Consent of Amended Operating Agreement and Redeploy Repayment in favor of Defendants Mastroianni on July 12 2018.

49. While clients represented by Litowtiz received refund of $500,000 in August without voting Fieldstone didn't assist 701 Plaintiffs to request withdrawal from 701 Fund until August 2018.

50. Even voting in favor of Defendants Mastroianni Fieldstone coerced 701 Plaintiffs to sign Withdraw/Release Agreement drafted by Defendants Mastroianni to give up claims to $50,000 of administrative fee and interests earned since making investment in 2014.

**C. DEFENDANTS INCLUDING FIELDSTONE INTERFERED IN BUSINESS RELATIONSHIP BETWEEN MA AND 701 FUND WITHDRAWING INVESTORS**

51. In May 2018 a number of 701 fund withdrawing investors approached Ma for translation, due diligence on 702 Fund and information on attorneys who can represent them during the withdrawing process.

52. Ma sent retainer agreements of attorney Litowitz to a number of 701 fund withdrawing investors and Ma would be working with attorney Litowitz with communications in Chinese with 701 fund withdrawing investors.

53. With information and belief, Defendants USIF and Qiaowai /GDOS organized a scheme to steer 701 Fund withdrawing investors to Fieldstone in attempt to secure approvals on Consent of Amended Operating Agreement and Redeploy Repayment from 701 Fund withdrawing investors.

54. About 40 of 701 Fund withdrawing investors signed engagement agreement with Fieldstone including those who had received retainer agreements of attorney Litowitz through Ma.

55. In 2018 Fieldstone coerced about 40 of 701 Fund withdrawing to sign Consent of Amended Operating Agreement and Redeploy Repayment in favor of Defendants Mastroianni.

56. In 2018 Litowitz and Ma helped a dozen of 701 Fund withdrawing investors to vote against Consent of Amended Operating Agreement and Redeploy Repayment.

57. At least one Fieldstone's client felt betrayed by Fieldstone's representation and re-engaged attorney Litowitz to complete withdrawing process on her term and against Defendants.

58. Ma filed a complaint with Fieldstone's law firm for Fieldstone's interfering Ma's business relations with 701 Fund Withdrawing investors and competed with attorney Litowitz. Fieldstone and his law firm ignored Ma's complaint.

59. In October 2018 Defendants Mastroianni filed a frivolous lawsuit against Ma and attorney Litowitz in New York Supreme Court ("New York Action") for their assistance of 701 Fund Withdrawing investors against Consent of Amended Operating Agreement and Redeploy Repayment. New York Action was later dismissed by the New York Court.

60. Defendants Mastroianni filed the New York Action and later made defamatory statements about Ma with sole intention to tarnish Ma's reputation among EB-5 investors.

## COUNT I – FRAUD IN THE INDUCEMENT

(Against Mastroianni, USIF, 701 Fund, 702 Fund, 701 Manager and 702 Manager)

61. The Plaintiffs repeat and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

62. Defendants Mastroianni entered a secret "Finder's Fee Agreement" with Plaintiffs' agent Qiaowai/GDOS. Defendants Mastroianni paid substantial kickback payment for

Qiaowai/GDOS to induce Plaintiffs to sign investment documents without full disclosures and make investment in 701 Fund and 702 Fund controlled by Defendants Mastroianni.

63. Defendants Mastroianni used "Finder's Fee Agreement to sabotaged fiduciary duty Qiaowai/GDOS owed to Plaintiffs.

64. Plaintiffs relied upon due diligence and fiduciary duty provided by Qiaowai/GDOS to make their investment decision.

65. If Plaintiffs knew about Finder's Fee Agreement between Defendants Mastroianni and Qiaowai/GDOS, they would not have engaged Qiaowai/GDOS as their agent and would not have invested with Defendant Mastroianni if full disclosure was provided.

66. As result of breach of fiduciary duty of Qiaowai/GDOS owed to Plaintiffs caused by Defendant Mastroianni, Plaintiffs made investment with Defendant Mastroianni with no right to withdraw or transfer without consent of Defendant Mastroianni. Defendant Mastroianni refuse to return capital contribution of $500,000 to YAN as well as administrative fees and interests earned to all of Plaintiff.

**WHEREFORE**, the Plaintiffs demand judgment against Mastroianni, USIF, 701 Fund, 702 Fund, 701 Manager and 702 Manager for compensatory damages in an amount to be determined at trial, together with interest at the maximum rate allowable, and injunctive relief, including without limitation, appointment of a SEC registered investment advisor, along with such other relief the Court deems just and proper.

## COUNT II – SECURITIES FRAUD

(Against Mastroianni, USIF, 701 Fund, 702 Fund, 701 Manager and 702 Manager)

67. The Plaintiffs repeat and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

68. Mastroianni, USIF, 701 Fund, 702 Fund, 701 Manager and 702 Manager admit that 701 Fund and 702 Fund may not comply with the applicable securities laws of the United States for, but not limited to, not registering with SEC.

69. By virtue of their management of 701 Fund and 702 Fund Defendant Mastroianni, USIF, 701 Manager and 702 Manager have violated Section 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") ) [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. §275.206(4)-8] by making material misrepresentations, engaging in a fraudulent scheme, and breaching their fiduciary duties to the Funds and their investors.

**WHEREFORE,** the Plaintiffs demand judgment against Mastroianni, USIF, 701 Fund, 702 Fund, 701 Manager and 702 Manager for compensatory damages in an amount to be determined at trial, together with interest at the maximum rate allowable, and injunctive relief, including without limitation, appointment of a SEC registered investment adviser, along with such other relief the Court deems just and proper.

## COUNT III – UNJUST ENRICHMENT

(Against Mastroianni, USIF, 701 Manager and 702 Manager)

70. The Plaintiffs repeat and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

71. Mastroianni, USIF, 701 Manager and 702 Manager admit that they are not registered investment advisors.

72. Mastroianni, USIF, 701 Manager and 702 Manager have violated Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act").

73. Mastroianni, USIF, 701 Manager and 702 Manager have received millions of dollars in management fees.  In December 2018, Mastroianni, through his shell company, received

$44,661,772.77 in payment from the Broadway Development for a financing commitment up to $494,500,000.  A larger portion of such fees are allocated for management fee paid to Mastroianni, USIF, 701 Manager and 702 Manager.

74. Without paying much distribution to members of 701 fund and 702 Fund, Mastroianni, USIF, 701 Manager and 702 Manager require members of 701 Fund and 702 Fund to accept phantom income and federal tax liabilities on that portion of the interest income received by 701 Fund and 702 Fund under the Mezzanine Loan which is (i) used to pay for operating expenses (including fees payable to foreign brokers, the USIF New York Regional Center and/or Manager) and (ii) not distributed to the Members.

**WHEREFORE,** the Plaintiffs demand judgment against Mastroianni, USIF, 701 Fund, 702 Fund, 701 Manager and 702 Manager for compensatory damages in an amount to be determined at trial, together with interest at the maximum rate allowable, and injunctive relief, including without limitation, appointment of a SEC registered investment advisor, along with such other relief the Court deems just and proper.

## COUNT IV – ADHESION CONTRACTS

(Plaintiffs Against Mastroianni, USIF, 701 Fund, 702 Fund, 701 Manager and 702 Manager)

75. The Plaintiffs repeat and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

76. That Operating Agreement and Withdraw/Release Agreement （"Agreement"）issued by 701 Fund and 702 Fund are adhesion contracts that were not the product of arm's-length negotiation.

77. The one-sided adhesion contracts reveal Defendants' intent to take advantage of Plaintiffs. Defendants Mastroianni drafted the Agreement. They held superior bargaining power.

Defendants Mastroianni exploited this. They used that power in the drafting of the Agreements and drafted them in a one-sided manner, favoring Defendants Mastroianni.

78. Typically, as Defendants Mastroianni knew and intended, Plaintiffs were put under time pressure to sign the Agreements and had insufficient opportunity to examine, read, translate, or understand the details of the voluminous documents prepared by Defendants Mastroianni, including the substantial legalese in Agreements.

79. Typically, as Defendants Mastroianni knew and intended, Plaintiff's attorneys, including Fieldstone, would not fully represent the interests of Plaintiffs in advising them on Agreements.

80. Defendants Mastroianni drafted the Agreements in such a way as to permit them to take advantage of Plaintiffs. For example, the Operating Agreements of 701 Fund and 702 Fund have eliminated the liability of the Manager and its affiliates for any breach of any duties (including fiduciary duties) that the Manager and its affiliates may have to 701 Fund and 702 Fund or any Member. The Operating Agreements of 701 Fund and 702 Fund provide that Member has no right to withdraw or transfer without consent of Defendants Mastroianni. The Withdraw/Release Agreement provides that Plaintiffs receive no interests on their investment nor refund of administrative fees when withdrawing.

81. The Agreements were permeated with illegal and unconscionable terms, and were therefore not enforceable.    The Agreements were "adhesion contract "–that is, "standard-form contract(s), drafted by the party with superior bargaining power, which relegate(d) the other party to the option of either adhering to its terms without modification or rejecting the contract entirely."

82. In short, the Agreements that Plaintiffs were coerced to sign are themselves instruments of the oppression by Defendants Mastroianni.

**WHEREFORE,** the Plaintiffs demand judgment against Mastroianni, USIF, 701 Fund, 702 Fund, 701 Manager and 702 Manager for compensatory damages in an amount to be determined at trial, together with interest at the maximum rate allowable, and injunctive relief, including without limitation, appointment of a SEC registered investment advisor, along with such other relief the Court deems just and proper.

### COUNT V– TORTIOUS INTERFERENCE WITH PROPSPECTIVE BUSINESS RELATIONSHIP

(Plaintiff Ma Against All Defendants Mastroianni including Fieldstone)

83. Ma repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

84. Ma had prospective business relationship with many 701 Fund withdrawing investors.

85. Defendants including Fieldstone know of that relationship and Defendants, individually and in collusion with one another, and with knowledge, by engaging in the conduct described above, directly or indirectly, interfered with that relationship.

86. Defendants individually and in collusion with one another, and with knowledge, by engaging in the conduct described above, directly or indirectly, acted solely out of malice and coercion, and/or improper means that amounted to a crime or independent tort.

87. Defendants' interference caused injury to Plaintiff's relationship with her present and future clients.

88. Defendants conduct was willful, wanton, malicious, and oppressive in their attempt to silencing Plaintiff from exposing collusion among Mastroianni, USIF, Qiaowai/GDOS, Fieldstone that has sabotaged the fiduciary duties they owe to Chinese EB-5 investors.

89. Defendants' unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiff in its business or property.

**WHEREFORE,** Plaintiff Ma demands judgment against Mastroianni, USIF, 701 Fund, 702 Fund, 701 Manager 702 Manager and Fieldstone for compensatory damages in an amount to be determined at trial, together with interest at the maximum rate allowable, and injunctive relief, including without limitation, along with such other relief the Court deems just and proper.

Plaintiffs respectfully demand a jury trial on all issues so triable.

Dated: July 5, 2020 Respectfully Submitted,

XUEJUN MAKHSOUS, Plaintiff, pro se    P. O. BOX 2651, GLENVIEW, IL 60025

LIXING YAN, Plaintiff, pro se    58 Chunyuan Rd, No. 101 Flat 402, Pudong, Shanghai, China

LINGFENG DUAN, Plaintiff, pro se  40 Mai Mai Street, Fragrant Hill Hotel, Haidian District, Beijing China

ZHIZHEN YIN, Plaintiff, pro se    Room 702, Unit 2, Lane 206, Hengbing Rd, Hongkou District, Shanghai China



YING YU, Plaintiff, pro se    Room 1501，Building 10，Younger Future City Shenhu Road，

Industrial Park Suzhou City, China 215021.

SHUANGQUAN SUN, Plaintiff, pro se    Unit 2-102, Building 13, Guiyuan Nanli Mou

Division, Yizhuang Development Zone, Daxing District, Beijing, China

XIAOFEI LIU, Plaintiff, pro se    Room 502, No. 23, 667 Nong, Daning Rd, Jingan District,
Shanghai, China

XUEZHENG DING, Plaintiff, pro se    No 3-3-201, Chunxiaoyuan, Feicuicheng, Xianlin Blvd,

Yuhang District, Hangzhou, Zhejiang, China

LILI ZHANG, Plaintiff, pro se Luxin Changcun Garden, Unit 38-1-202, Yinchuan East Rd. No1.

Laoshan District, Qingdao, Shandong Province, China

---

JIANGMAN CHEN, Plaintiff, pro se    Building 8, Unit 1401, Chengshi Shangu, Tonggu Road,

Nanshan District, Shenzhen, Guangdong, China.

Jane Doe 1-99, Plaintiff, pro se, China

JiangMan
Chen



**1568 BROADWAY FUNDING 100, LLC**
**STATEMENT OF OPERATIONS AND MEMBERS' EQUITY**
**FOR THE YEAR ENDED DECEMBER 31, 2017 AND FOR THE PERIOD**
**FROM INCEPTION (FEBRUARY 24, 2016) TO DECEMBER 31, 2016**

|  | 2017 | 2016 |
|---|---|---|
| Revenue: |  |  |
| Application fee income | $ 50,000 | $ 75,000 |
| Loan interest income | 4,876,667 | - |
| Loan origination fee income | 2,800,000 | - |
| Service fee income | 152,500 | 837,500 |
| Facility fee income | 5,920,970 | 1,822,473 |
| Subordination fee income | 480,000 | - |
| Total revenue | 14,280,137 | 2,734,973 |
| Expenses: |  |  |
| Application fees | 50,000 | 75,000 |
| Management fees | 13,658,654 | 1,753,959 |
| Regional center fees | 418,983 | 68,514 |
| Service fees | 152,500 | 837,500 |
| Total expenses | 14,280,137 | 2,734,973 |
| Net income (loss) | - | - |
| Members' equity, beginning | 139,000,000 | - |
| Contributions | 38,500,000 | 139,000,000 |
| Members' equity, ending | $ 177,500,000 | $ 139,000,000 |

**1568 BROADWAY FUNDING 100, LLC**
**BALANCE SHEET**
**DECEMBER 31, 2017 AND 2016**

**ASSETS**

|  | 2017 | 2016 |
|---|---|---|
| **Current assets:** | | |
| Cash and cash equivalents | $ 15,657,675 | $ 139,033,08 |
| Funds held in escrow | 8,875,000 | 8,004,00 |
| Loan interest receivable | 115,964 | 644,64 |
| Prepaid expenses | 8,920,264 | |
| Due from related parties | 4,533,471 | 4,333,4 |
| | | |
| **Total current assets** | 38,102,374 | 152,015,2 |
| | | |
| **Other assets:** | | |
| Loan receivable | 160,000,000 | |
| | | |
| **Total assets** | $ 198,102,374 | $ 152,015,2 |

## LIABILITIES AND MEMBERS' EQUITY

Current liabilities:

| | | |
|---|---|---|
| Administrative fee payable | $ | 3,821,159 |
| Administrative fee payable- related party | | 74,220 |
| Due to related parties | | 8,106 |
| Unearned interest received | | 16,698,889 |
| Total liabilities | | 20,602,374 |

Members' equity:

| | | |
|---|---|---|
| Members' equity | | 177,500,000 |
| Total liabilities and members' equity | $ | 198,102,374 |



Signature | SIGNATURE BANK

Statement Period
From July 01, 2017
To July 31, 2017
Page 2 of 2

PRIVATE CLIENT GROUP 167
280 PARK AVENUE SOUTH
NEW YORK, NY 10003

1568 BROADWAY FUNDING 100 LLC 8-167
115 FRONT ST, SUITE 300
JUPITER FL 33477

See Back for Important Information

Summary

| | | |
|---|---|---|
| Previous Balance as of July | 01, 2017 | 167,716,304.34 |
| 2 Credits | | 480,700.37 |
| 2 Debits | | 167,716,304.34 |
| Ending Balance as of July | 31, 2017 | 480,700.37 |

Deposits and Other Credits

| | | | |
|---|---|---|---|
| Jul 05 | TRANSFER CR<br>TRANSFER FROM: XXXX605387 | | 475,000.00 |
| Jul 31 | Interest Paid | | 5,700.37 |

Withdrawals and Other Debits

| | | | |
|---|---|---|---|
| Jul 05 | OUTGOING WIRE XFER<br>REF# 20170705B6B7261F000941<br>TO: ROSENBERG AND ESTIS PC<br>BANK: CITIBANK NYC | ABA: 021000089<br>ACCT# 37361352 | 167,675,000.00 |
| Jul 07 | TRANSFER DR<br>TRANSFER TO: XXXX126403 | | 41,304.34 |

Daily Balances

| | | | |
|---|---|---|---|
| Jun 30 | 167,716,304.34 | Jul 07 | 475,000.00 |
| Jul 05 | 516,304.34 | Jul 31 | 480,700.37 |

************************************ Interest Summary ************************************

| | | | |
|---|---|---|---|
| Year-To-Date Interest | 231,171.24 | | |
| Interest Paid This Period | 5,700.37 | Annual Percentage Yield Earned | 0.30 % |
| Avg. Balance this Period | 22,057,187.93 | Days in Period | 31 |

CONFIDENTIAL – MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER

**Master Finder's Fee Agreement**

**BY SIGNING THIS AGREEMENT, YOU CONFIRM THAT YOU READ AND UNDERSTAND ENGLISH OR HAVE HAD THIS CONFIDENTIAL AGREEMENT TRANSLATED BY A COMPETENT TRANSLATOR INTO A LANGUAGE YOU UNDERSTAND.**

THIS MASTER FINDER'S FEE AGREEMENT (this "**Agreement**") is made and entered into as of *November 4* , 2015, by and between **U.S. Immigration Fund, LLC** ("**USIF**") and each of the respective funding companies identified in the schedules attached hereto and made a part hereof (each a "**Company**") each with its principal place of business in Jupiter, Florida, address: 115 Front Street, Jupiter, Florida 33477 and **Beijing Overseas Education & Immigration Consult Service Co., Ltd.** (the "**Finder**") whose principal business is located in Beijing, China, address: 32/F, Tower A, The Spaces International Center, DongDaQiao Street, ChaoYang District, Beijing, 100020. Sometimes USIF, the Company and Finder shall individually be referred to herein as a "Party" or collectively as the "Parties".

WHEREAS, the Company was formed to enable accredited investors to become eligible for admission to the United States of America pursuant to the U.S. Citizenship and Immigration Services ("USCIS") Immigrant Investor Fifth Employment-based Visa Preference Program commonly known as the "**EB-5 Program**";

WHEREAS, the Company seeks purchasers of membership interests ("**Units**") pursuant to a private placement and related agreements (each an "**Offering**") from qualified sophisticated natural persons who are not United States citizens or lawful permanent residents of the United States or are otherwise "U.S. persons" ("**Foreign Investors**") as defined in Regulation S promulgated pursuant to the U.S. Securities Act of 1933, as amended ("**Regulation S**"), and who desire to become investors in the Company, for the purpose of lending the proceeds of each respective Offering for use in the construction of real estate projects located within the United States (each a "**Project**");

WHEREAS, the Finder has access to Foreign Investors and the Company desires that Finder introduce to the Company those Foreign Investors interested in investing in the Company; and

WHEREAS, the Parties wish to formalize their agreement with respect to any fees payable by Company to the Finder in consideration for Finder's introduction of the Foreign Investors to the Company, subject to the terms herein;

THEREFORE, in consideration of the mutual covenants and representations contained herein, and intending to be legally bound, the Parties hereto agree as follows:

1.     Term:    The term of this Agreement shall commence effective as of the date first written above and shall continue in effect until terminated as provided hereinafter. The term for the terms agreed upon in the attached schedules shall expire upon the earlier of (i) five (5) years commencing upon the execution of the corresponding schedule (each a "**Project Schedule**"), or (ii) the repayment of the loan for the relevant Project ("**Loan**") and payment of all interest due and owing thereafter (the "**Term**").

STRICTLY CONFIDENTIAL PURSUANT
TO ORDER DATED OCTOBER 15, 2019

CONFIDENTIAL – MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER

2.   Investment; Compensation: Except as otherwise stated in a Project Schedule, should any Foreign Investor deposit Five Hundred Thousand Dollars USD$500,000.00 or such amount as is required by USCIS for the investment to be considered a qualifying investment in a "Targeted Employment Area" (such amount the "**Investment**") together with the Dollar USD $          (or other amount stated in a Project Schedule) administrative fee into the escrow account established by the Company with Signature Bank, or any other bank the Company may designate pursuant to an agreement to hold said amount (the "**Escrow Agreement**"), then Company agrees to pay Finder a fee ("**Finder's Fee**") as compensation under this Agreement according to the following:

1)          for each Foreign Investor introduced by Finder will be paid by the Company within Fifteen (15) business days after such Foreign Investor deposits the Foreign Investor's full subscription amount into the Escrow account, and

2)          for each Foreign Investor introduced by Finder will be paid by the Company within Fifteen (15) business days after the Company receives notification of USCIS 's acceptance of the filing of the Foreign Investor's I-526 Petition, and

3)          for each Foreign Investor introduced by Finder will be paid by the Company within Fifteen (15) business days after the Company receives notification from USCIS that the Foreign Investor's I-526 Petition has been approved.

3.   Marketing Fee Payable to Finder.  In addition to the Finder's Fee, Finder shall be entitled to receive a payment (the "**Marketing Fee**") of          per Foreign Investor introduced by Finder in consideration for Finder's implementation of a strategic, cooperative marketing plan to be agreed upon by the parties and periodically reviewed (no less than quarterly). Such payment is also intended to reimburse Finder for the expenses associated with implementation of such marketing plan and any additional costs associated therewith shall be the sole responsibility of Finder.

3.1 Each of the following funding companies have previously paid the Marketing Fee to an affiliate of Finder and Finder acknowledges that Finder has previously received such payment which constitutes full satisfaction of the payment of any Marketing Fees owed to Finder by the companies, USIF and any affiliates:

3.2 In consideration for marketing activities previously undertaken by Finder with respect to Projects for each of the following funding companies, and in consideration for and upon execution of this agreement, the following companies shall pay to Finder the Marketing Fee in respect of each investor introduced by Finder and such payment shall constitute full satisfaction of the payment of any Marketing Fees owed to Finder by the Company, USIF and any affiliates: .

2

CONFIDENTIAL – MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER

For the new Projects on the
Project Schedules                                                   the Marketing Fee
shall be paid upon funding of the investor's Investment subject to the satisfaction of the
escrow release conditions in the relevant Project's escrow agreement.

4.   Annual Fee Payable to Finder:  In addition to the Finder's Fee, Finder will be entitled to
receive an amount equal to the percentage to be agreed upon (and as stated in the Project
Schedules attached hereto for the relevant Project) of the Investment per year (the "**Annual
Fee**") commencing from the date of the closing and funding of at least ninety-five percent (95%)
of the proceeds of the Loan to the developer of the Project (the "**Developer**") contemplated in
the Offering and expiring on the maturity date of the Loan for each such Project. The Annual Fee
shall be funded out of the interest payments to be made by the Developer to the Company
pursuant to the terms of the Loan to be entered into between the Company and the Developer.
Provided that at least ninety-five percent (95%) of the proceeds of the Loan are funded and
interest payments are paid, the Annual Fee shall be paid to Finder on a quarterly basis, in arrears
within fifteen (15) business days after the Company receives payments of interest pursuant to the
Loan. Schedule A attached hereto provides an illustration of the payment of such Annual Fee.

5.   Investor and Fee Refund Policy:

Foreign Investors shall be entitled to the return of all or a portion of their administrative
fees and Investments in the following circumstances:

- In the event the Offering is cancelled because the minimum amount required under
the Offering documents is not raised, then each Foreign Investor will be entitled to
the return of the Foreign Investor's administrative fee and the Foreign Investor's
Investment. In such case, the Finder will return to the Company the full amount of the
Finder's Fee paid pursuant to Section 2.

- If the USCIS fails to approve any Foreign Investor's I-526 Petitions solely because
the USCIS does not approve the Project, then such Foreign Investor will be entitled to
the return of all or a portion of the Foreign Investor's administrative fee and the
Foreign Investor's Investment, provided that the Investment has not been funded to
the Developer. In such case, the Finder will return to the Company the full amount of
the Finder's Fee paid pursuant to Section 2 if the relevant offering memorandum
corresponding to the Project grants a full refund. If the refund due to the Foreign
Investor is all but          then Finder shall return to the Company the full amount
less          of the Finder's Fee paid to Finder pursuant to Section 2 of this
Agreement.

- If any Foreign Investor's I-526 Petition is not approved by the USCIS for any other
reason (provided that the Foreign Investor made a good faith effort to obtain the
approval of the USCIS), then the Foreign Investor will be entitled to the return of the
Foreign Investor's Investment. In this case, the Company will retain the
administrative fee. In such case, the Finder may retain the full amount of any
payments that have been made or that are due to Finder under this Agreement.

3

CONFIDENTIAL – MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER

- If the Developer requires a minimum loan amount to accept the Loan and the Company is not able to fund a Loan of at least such amount by the outside date as described in the term sheet and Offering for such Project, and the Developer does not waive this requirement, then each Foreign Investor will be entitled to the return of all but          of the Foreign Investor's administrative fee and all of the Foreign Investor's Investment. The Company will retain the remaining          of the administrative fee. In such case, Finder shall return to the Company the full amount less          of the Finder's Fee paid to Finder pursuant to Section 2.

- If the Developer fails to meet the conditions for the funding of the Loan, then each Foreign Investor will be entitled to the return of all but          of the Foreign Investor's administrative fee and all of the Foreign Investor's Investment. The Company will retain the remaining          of the administrative fee. In such case, Finder shall return to the Company the full amount less          of the Finder's Fee paid to Finder pursuant to Section 2.

- If the Company approves the withdrawal by a Foreign Investor from the Company, then such Foreign Investor will be entitled to the return of the Foreign Investor's Investment. In this case, the Company will be entitled to retain the administrative fee, but may return all or a portion of the administrative fee in its discretion. In such case, the Finder may retain the full amount of any payments that have been made to Finder or that are due under this Agreement, unless the Company elects to return the administrative fee in which case the Finder will return to the Company the full amount of the Finder's Fee paid pursuant to Section 2.

- If the Company elects to reject a Foreign Investor's subscription because the Foreign Investor fails to file an I-526 Petition within 120 days after funding the Foreign Investor's investment. In this event, the Company will refund all of the Foreign Investor's Investment and          of the administrative fee to the Foreign Investor. The Company will retain the remaining portion of the administrative fee. In such case, the Finder may retain the full amount of any payments that have been made or that are due to Finder under this Agreement.

6.    Cooperation:  Finder shall have right to introduce prospective Foreign Investors to the Company for Projects which meet the definition of "accredited investor" under Securities and Exchange Commission Rule 501 or Regulation D and who are not United States citizens or lawful permanent residents of the United States or are otherwise "U.S. persons" as defined in Regulation S, and/or are otherwise acceptable based on the judgment of I.A. Donoso & Associates, LLC ("U.S. Immigration Counsel") or to any other qualified immigration attorney the Foreign Investor so chooses. The parties acknowledge the mutual benefits of their relationship and the success of the relationship is based on numerous factors, including the confidential and exclusive relationship that has existed over the past several years. The parties intend to cooperate, in good faith, to implement a marketing strategy that results in the timely funding of Projects in accordance with the funding schedules to the Developers. Finder acknowledges that timely funding to the Developers is a material condition to this Agreement and as such, shall endeavor to not divert Foreign Investors to U.S. projects which compete with the Projects.

4

CONFIDENTIAL – MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER

7.    Acceptance of Foreign Investors: The decision to accept a Foreign Investor in the Company is in the absolute and sole discretion of the Company. It is acknowledged and agreed by Finder that no Finder's Fee or Annual Fee will be due and payable to Finder unless the Foreign Investor is accepted as an investor into the Company, which determination shall be made prior to the Foreign Investor's initial deposit into Escrow.

8.    Legal Representation:  Finder acknowledges and agrees that Immigration Counsel will represent the Foreign Investor in reviewing Foreign Investor's background, in determining whether Foreign Investor meets the qualifications to apply for EB-5 Visa under the EB-5 Program and in preparing and filing the Investor's I-526 Petition. Finder also agrees that subject to the Foreign Investor's choice, the U.S. Immigration Counsel will file all of the I-526 Petitions on the Project. It is the Finder's responsibility to ensure that all I-526 Petition cases are referred to U.S. Immigration Counsel.

9.    Limitation of Services:  This Agreement relates solely to Finder's services rendered in providing the Company with the name of the Foreign Investor. There are no additional services that Finder is required to perform to be entitled to the Finder's Fee in the event the Investment in the Company is made and USCIS approves the Foreign Investor's I-526 Petition, subject to the refund policy in Section 5.

10.    Representations and Acknowledgement: Finder, on the one hand, and the Company, on the other hand, hereby represent and warrant to each other and acknowledge and agree that (i) the Offering shall be conducted pursuant to Regulation S, only non U.S. persons (as defined in Regulation S) will participate, and the offer and sale of Units shall only be conducted in offshore transactions (as defined in Regulation S), (ii) Finder shall contact all potential Foreign Investors outside the United States, and all other relevant communications shall be made outside the U.S. (iii) Finder is not a licensed or registered securities broker or dealer, or investment advisor in the U.S. and as such will not conduct activities in the U.S. for which registration as a securities broker, dealer or investment advisor is required, (iv) Finder shall not be liable to the Company for any liability arising out of the Company's failure to conduct the Offering pursuant to or in according with Regulation S (including Rule 902(b)(3) thereof), (v) Finder and the Company are each in compliance applicable laws and regulations relating to the performance of this Agreement and the Offering, (vi) Finder is duly organized, validly existing and in good standing under the laws of P.R. China and has obtained the necessary license from relevant public authorities in P.R. China to act as an immigration agency in the U.S. EB-5 Program. Except as expressly set forth in this Agreement, Finder and the Company make no representations or warranties whatsoever, either express or implied, (vii) Finder shall furnish to the Company such information in writing as shall be requested by the Company with respect to any disclosures or certifications required by the USCIS, the SEC or any applicable regulatory agency having jurisdiction, including but not limited to annual certifications that Finder is in compliance with the terms of this Agreement, and (viii) nothing in this Agreement shall cause Finder to be the Company's partner, employee, or agent, or give Finder any authority to act for the Company. The Company shall not be liable for any of Finder's acts or obligations under this Agreement.

5

CONFIDENTIAL – MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER

11.    <u>Miscellaneous</u>: This Agreement shall be binding upon the Parties and their respective estates, heirs, successors, and permitted assigns. This Agreement may be changed only by the written consent of both Parties. This Agreement is not assignable. This Agreement is the entire agreement between the Parties, and supersedes all prior agreements, oral or written, if any between the Parties, and there are no other understandings, representations or warranties between the Parties except as set forth in this Agreement. This Agreement may be signed in any number of counterparts, each of which shall be deemed an original.   Delivery of executed pages by facsimile or electronically will constitute effective delivery of this Agreement and have the same effect as the delivery of an original executed counterpart.

12.    <u>Termination for Cause</u>: The Company has the right to terminate this Agreement, if in its sole discretion the Finder is in breach of any of the material terms of this Agreement. For the avoidance of doubt, if the representations contained in Section 10 are found at any point to not be true, this shall be considered a material breach of the terms of this Agreement.   The Finder also has the right to terminate this Agreement if in its opinion the Company breached any material representations in this Agreement. If this Agreement is terminated, the terminating party shall deliver thirty (30) days prior written notice to the other Party. The Company and the Finder also agree that either Party, in its sole discretion may waive any breach of this Agreement. Either Party shall also have thirty (30) days to cure a material breach of this Agreement from the date of notification by the terminating party. Notwithstanding the foregoing, the provisions of Sections 2, 3, 4, 5, 10, 13,14 and 15 hereof, shall survive any such termination or the expiration of this Agreement.

13.    <u>Fees and Expenses</u>. Should any legal proceeding be necessary to construe or enforce the provisions of this Agreement, then the prevailing party in such legal action shall be entitled to recover all court costs, reasonable attorney fees, and costs of enforcing or collecting any judgment awarded. Except as a result of breach of their representations and agreements in Section 10(i) hereof, for which the Company shall indemnify the Finder, under no circumstances shall the Company be liable to Finder with respect to any matter contemplated by this Agreement for any costs (other than the Finder's Fee and Annual Fee), or for any indirect, incidental consequential, special or punitive damages, and, except as a result of breach of their representations and agreements in Section 10(i) hereof, in no event shall the Company's liability arising out of or relating to this Agreement exceed the aggregate amount of the Finder's Fee, Marketing Fee and Annual Fee paid and payable to Finder pursuant to Sections 2, 3 and 4 of this Agreement.

13.1    <u>Guaranty</u>.   As an inducement for Finder to enter into this Agreement, USIF hereby guarantees the full payment of the Finder's Fee and Annual Fee for each Project. Notwithstanding the foregoing, Finder acknowledges and agrees that each Project is unique and unrelated to any other Project.   As such, the obligations of any Company shall not be the obligation of any other Company listed in the Project Schedules.

14.    <u>Governing Law</u>. The judgment by any court of law that a particular section of this Agreement is illegal or unenforceable shall not affect the validity of the remaining provisions. It is the Parties' intention that the laws of the State of New York shall govern the validity of this Agreement.

<div align="center">6</div>

YAN1568_497

CONFIDENTIAL – MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER

15.     Schedules. Company and Finder will execute Schedules (governed by this Agreement) to evidence their agreement on specific Projects. Such Schedules will appear substantially similar to Schedule A attached hereto. Such Schedules will memorialize the terms of the amount of the fees payable to Finder under this Agreement.   Finder agrees that to perfect its interest in payments owed for any introduced Foreign Investor, it must possess a validly executed Schedule from the Company.



7

STRICTLY CONFIDENTIAL PURSUANT
TO ORDER DATED OCTOBER 15, 2019

YAN1568_498

Case: 1:19-cv-01230 Document #: 88-2 Filed: 05/05/20 Page 8 of 10 PageID #:4218

CONFIDENTIAL – MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER

Our signatures below shall legally bind us to the terms and conditions of this Agreement in its entirety. We understand, agree, and accept the above terms and conditions of this Agreement as of the date first set forth above.

**FINDER**
**BEIJING OVERSEAS EDUCATION & IMMIGRATION CONSULT SERVICE CO., LTD**

By: _____

Name: _____ YING DING

Date: ___ 11/04/2015

**GUARANTOR**

**U.S. IMMIGRATION FUND, LLC**

By: Capital 600, LLC (Its Managing Member)

By:_____

Name: Nicholas A. Mastroianni, II

Its:    Manager

8

STRICTLY CONFIDENTIAL PURSUANT
TO ORDER DATED OCTOBER 15, 2019

YAN1568_499

CONFIDENTIAL -- MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER

Schedule A

Company:

Project Description:

Annual Fee/Administrative Fee:

Annual Fee Payment Schedule:

Finder will be entitled to receive the Annual Fee for a period commencing from the closing and funding of at least ninety-five percent (95%) of the proceeds of the Loan to the Developer and expiring on the maturity date of the Loan. The Annual Fee shall be funded out of the interest payments to be made by the Developer to the Company pursuant to the terms of the Loan to be entered into between the Company and the Developer. Provided that at least ninety-five percent (95%) of the proceeds of the Loan are funded and interest payments are paid, the Annual Fee shall be paid to Finder on a quarterly basis, in arrears within fifteen (15) business days after the Company receives payments of interest pursuant to the Loan.

The illustration below shows the calculation of payments to be made to the Finder.

**For Illustration Purposes**

**(Loan Amount $[Amount] and Assuming 95% of Loan Funded)**

**I. Annual Fee Payment Commencement (95% of the Loan)**
Loan Amount at Which Payment Commences: $[A] (95% of $[Loan Amount])
Annual Fee: $[B] ([Annual Fee Percentage]% of $[A])
Annual Fee Disbursed Quarterly in Arrears Years 1-5: $[C] ($[B] divided by 4)

**II. Subsequent Loan Amount (the remaining 5% of the Loan)**
Subsequent Loan Amount: $[Remaining Amount]
Annual Fee: $[D] ([Annual Fee Percentage]% of $[Remaining Amount])
Annual Fee Disbursed Quarterly in Arrears Years 1-5*: $[E] ($[D] divided by 4)

*Commencing and adjusted pro rata according to when subsequent loan proceeds are funded to the Developer.

CONFIDENTIAL – MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER



| | 1568 Broadway | | | From | | To |
|---|---|---|---|---|---|---|
| Date | Payee | | Amount | Acct # | | Acct # |
| | | | | | YAN LIXING FUNDS FLOW | |
| | | | | | PAYMENTS TO GDOS relative to YAN LIXING | |
| 2017.01.12 | GDOS | $ | 10,000.00 | 5751 | Agent fee from Admin Fees | GDOS |
| 2018.02.02 | GDOS | $ | 20,000.00 | 5751 | Agent fee | GDOS |

STRICTLY CONFIDENTIAL PURSUANT
TO ORDER DATED OCTOBER 15, 2019

YAN1568_002

*Ex3*

CONFIDENTIAL – MAY NOT BE DISSEMINATED, DISTRIBUTED OR POSTED ON INTERNET PURSUANT TO ORDER

**1568 Broadway**

| Date | Payee | | Amount | From Acct # | | To Acct # |
|------|-------|---|--------|-------------|---|-----------|
| | | | | | YAN LIXING FUNDS FLOW | |
| | | | | | PAYMENTS TO GDOS relative to YAN LIXING | |
| 2017.01.12 | GDOS | $ | 10,000.00 | 5751 | Agent fee from Admin Fees | GDOS |
| 2018.02.02 | GDOS | $ | 20,000.00 | 5751 | Agent fee | GDOS |

STRICTLY CONFIDENTIAL PURSUANT
TO ORDER DATED OCTOBER 15, 2019

**YAN1568_002**

Ex 4

# SAUL EWING
# ARNSTEIN
# & LEHR LLP

July 20, 2018

To: Supreme Court of The State of New York, County of New York

Re:   Verified Petition for Injunction (the **"Injunction Petition"**)
Index No.: 156339/2018

Dear Sir or Madam:

The purpose of this letter is to state our position that if the Court rules in favor of the Injunction Petition, we strongly believe all those members of 701 TSQ 1000 Funding, LLC (the **"Company"**) who elected to have the Company redeploy their money would be highly prejudiced for the reasons set forth in that certain *"USCIS Rules on Sustainment of Investors Funds and Redeployment"* recently issued by the EB-5 Investment Coalition.

In considering the foregoing, please be advised that our Firm has assisted in multiple redeployment transactions under the EB-5 program involving over $500 million. Additionally, we represent a group of members of the Company who have elected to have the Company redeploy their money in order to maintain their immigration status under the EB-5 program.

Please feel free to contact me with questions or concerns regarding the foregoing matter.

Very truly yours,

SAUL EWING ARNSTEIN & LEHR, LLP

By: _____
Ronald R. Fieldstone
Attorney at Law

Southeast Financial Center • 200 S. Biscayne Blvd., Suite 3600 • Miami, FL 33131
Phone: (305) 428-4500 • Fax: (305) 374-4744

DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

115013271.1

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

This envelope is made from post-consumer waste. Please recycle – again.

**PRIORI**

| UNITED STATES POSTAL SERVICE. | **Retail** |
|---|---|

**P** | US POSTAGE PAID
**$10.90** | Origin: 60659
07/11/20
1615700451-16

**PRIORITY MAIL 2-DAY ®**

0 Lb 6.00 Oz
**1006**

EXPECTED DELIVERY DAY: 07/14/20

C028

SHIP
TO:
701 CLEMATIS ST
RM 202
WEST PALM BEACH FL 33401-5113

**USPS SIGNATURE® TRACKING #**



9510 8107 5592 0193 2642 76

FROM:
Xuejun Mak
P.O. Box
Glenview

US Dist
Paul G. Re
701 Cl
West Palm