**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 20-cv-81141-MIDDLEBROOKS/BRANNON**

XUEJUN MAKHSOUS, LIXING YAN,
LINGFENG DUAN, ZHIZHEN YIN,
LILI ZHANG, YING YU, SHUANGQUAN
SUN, XIAOFEI LIU, XUEZHENG DING,
JIANGMAN CHEN, and JANE DOES 1-99,

       Plaintiffs,

v.

NICHOLAS A. MASTROIANNI, II, U.S.
IMMIGRATION FUND, LLC, 701 TSQ
1000 FUNDING, LLC, 701 TSQ 1000
FUNDING GP, LLC, 1568 BROADWAY
FUNDING 100, LLC, 1568 BROADWAY
FUNDING 100 GP, LLC, and RONALD
FIELDSTONE,

       Defendants.

_____/


**THE USIF DEFENDANTS' MOTION TO DISMISS AND TO COMPEL**
**ARBITRATION AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES.................................................................................................... iii

I.    PRELIMINARY STATEMENT..................................................................................1

II.   FACTUAL BACKGROUND .......................................................................................3

    A.  The Allegations in the Complaint...................................................................3

        1.  The EB-5 Immigrant Investor Program .................................................3

        2.  The Parties and the Relevant Transactions............................................3

            a.  The USIF Defendants....................................................................3

            b.  The Releasors................................................................................4

            c.  Yan ...............................................................................................5

            d.  Makhsous......................................................................................5

            e.  Fieldstone.....................................................................................6

        3.  The Claims Asserted in the Complaint .................................................6

    B.  Other Proceedings by Makhsous and Yan Against the USIF Defendants...................7

III.  ARGUMENT ................................................................................................................9

    A.  The Standard on a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) ......................9

    B.  The Court Should Dismiss the Releasors' Claims.......................................................10

        1.  The Releasors Released Their Claims Against the USIF Defendants.................10

        2.  The Complaint Does Not Plausibly Allege that the Release Agreements Are Barred by Fraud or that They Are "Adhesion Contracts."...................................12

    C.  The Court Should Dismiss All of Makhsous' Claims .................................................13

        1.  Makhsous Cannot State a Claim Under Counts I-IV...........................................13

i

a.   Makhsous Lacks Standing to Assert Claims Under Counts I-IV
Because She Was Not an Investor in 701 Fund or 702 Fund .........................13

b.   Makhsous Has Not Plausibly Alleged An Assignment .................................14

c.   Any Assignment to Makhsous Is Void Because It Was Champertous ...........14

d.   If There Was an Assignment, the Releasors Released Makhsous'
Claims Under Counts I-IV Before Assigning Them......................................15

2.   The Court Should Dismiss Count V, for Tortious Interference ...........................15

a.   The Court Should Dismiss Count V Because Makhsous Continues to
Assert the Same Claim in the Prior Pending N.D. Ill. Action ......................15

b.   The Court Should Dismiss Count V for Failure to State a Claim..................16

c.   Makhsous' Tortious Interference Claims Against 701 Manager and
702 Manager Are Barred by *Res Judicata*......................................................18

D.   The Court Should Dismiss Yan's Claims Against the USIF Defendants .................19

1.   Yan's Court-Ordered, Prior Pending Arbitration Against
the USIF Defendants Requires Dismissal of His Claims Here ...........................19

2.   The Federal Arbitration Act Requires Dismissal of Yan's Claims .....................19

IV.  CONCLUSION ................................................................................................................21

LOCAL RULE 7.1(a)(3) CERTIFICATION.......................................................................21

REQUEST FOR HEARING ................................................................................................21

# **TABLE OF AUTHORITIES**

Page

Cases

*Ackoff-Ortega v. Windswept Pac. Entm't Co. (Inc.)*, 120 F. Supp. 2d 273
   (S.D.N.Y.), *on reconsideration*, 130 F. Supp. 2d 440 (S.D.N.Y. 2000),
   *aff'd*, 46 F. App'x 663 (2d Cir. 2002) ...............................................................................15

*AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365 (S.D. Fla. 1991)..................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................................9

*Broyhill Furniture Indus., Inc. v. Hudson Furniture Galleries, LLC*,
   61 A.D.3d 554, N.Y.S.2d 72 (N.Y. App. Div. 1st Dep't 2009).............................................13

*Carvel v. Newman*, 2010 WL 11504368 (S.D. Fla. Nov. 9, 2010),
   *adopted*, Final Order of Dismissal, No. 09-cv-61815-WJZ
   (S.D. Fla. Mar. 28, 2011), ECF No. 28 ................................................................................16

*Copeland v. Hous. Auth. of Hollywood*, 337 F. App'x 842 (11th Cir. 2009)...............................19

*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005) ..........................................................................10

*De Pombo v. IRINOX N. Am., Inc.*, 2020 WL 2526499 (S.D. Fla. May 18, 2020).....................20

*Dunne v. Doyle*, 2014 WL 3735287 (D. Conn. July 28, 2014) ...................................................19

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) .............................................20

*George A. Fuller Co. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326
   (7th Cir. 1983)......................................................................................................................18

*Hardick v. Homol*, 795 So. 2d 1107 (Fla. 5th DCA 2001)....................................................14, 15

*I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541 (11th Cir. 1986)..................................16

*Ins. Co. of the State of Pa. v. Centex Homes*, 2014 WL 12577032
   (S.D. Cal. Apr. 3, 2014)........................................................................................................19

*Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 325 N.E.2d 137
   (N.Y. 1975)...........................................................................................................................15

*Laramee v. Jewish Guild for the Blind*, 72 F. Supp. 2d 357 (S.D.N.Y. 1999)......................10, 12

*Llano Fin. Grp., LLC v. Lendzion*, 2016 WL 930660 (N.D. Ill. Mar. 11, 2016)..........................14

*Lopez v. McGill*, 2009 WL 179787 (D. Conn. Jan. 21, 2009)....................................................16

*Madison Fund, Inc. v. Midland Glass Co.*, 1980 WL 332958
    (Del. Super. Ct. Aug. 11, 1980) .........................................................................................15

*Makhsous v. Mastroianni*, 2020 WL 1530740 (N.D. Ill. Mar. 31, 2020) ............................*passim*

*MAO-MSO Recovery II, LLC v. Am. Family Mut. Ins. Co.*, 2018 WL 835160
    (W.D. Wis. Feb. 12, 2018)...................................................................................................14

*MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co.*, 2018 WL 295527
    (S.D. Fla. Jan. 3, 2018).......................................................................................................14

*Mateo v. Carinha*, 2019 WL 1409727 (S.D.N.Y. Mar. 28, 2019),
    *aff'd*, 799 Fed. App'x 51 (2d Cir. 2020)............................................................................10

*Mathews v. Advised Assets Grp., LLC*, 2019 WL 4645503
    (D. Mass. Sept. 24, 2019) ...................................................................................................19

*McKinney-Green, Inc. v. Davis*, 606 So. 2d 393 (Fla. 1st DCA 1992)......................................18

*Methodist Hosp. of S. Cal. v. Blue Cross of Cal.*, 2010 WL 11508022
    (C.D. Cal. Feb. 26, 2010) ...................................................................................................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ..............................20

*Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090
    (Fla. 4th DCA 2009)............................................................................................................17

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).....................................20

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989).....................................20

*Sea-Land Serv., Inc. v. Remington Rand Corp.*, 1986 WL 8862
    (S.D.N.Y. Aug. 7, 1986), *aff'd sub nom. Sealand Serv. Inc. v.*
    *Remington Rand Corp.*, 812 F.2d 713 (2d Cir. 1987)........................................................15

*Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311 (S.D. Fla. 2004) .................................20

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016)..............................13

*State v. Family Bank of Hallandale*, 667 So. 2d 257 (Fla. 1st DCA 1995) .................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).........................................3, 10

*Wright v. Eastman Kodak Co.*, 445 F. Supp. 2d 314 (W.D.N.Y. 2006) .................................13, 16

Statutes, Rules and Regulations

8 U.S.C. § 1153(b)(5) .................................................................................................3

9 U.S.C. § 2 ....................................................................................................... 1, 19

9 U.S.C. § 3 ....................................................................................................... 1, 19

9 U.S.C. § 4 ....................................................................................................... 1, 19

Fed. R. Civ. P. 12(b)(6) ........................................................................... *passim*

N.Y. Gen. Oblig. L. § 15–501 ...............................................................................13

S.D. Fla. Local Rule 7.1(a)(3) ..............................................................................21

S.D. Fla. Local Rule 7.1(b)(2) ..............................................................................21

Treatises

Charles Alan Wright, *et al.*, 5C FEDERAL PRACTICE AND PROCEDURE § 1360
    (3d ed. 2020) ...................................................................................................16

Other Authorities

USCIS Policy Manual, Volume 6, Part G, Ch. 1, §§ A, B.1
    (https://www.uscis.gov/policy-manual/volume-6-part-g-chapter-1) .......................................3

USCIS Policy Manual, Volume 6, Part G, Ch. 2
    (https://www.uscis.gov/policy-manual/volume-6-part-g-chapter-2) .......................................3

The USIF Defendants[1] hereby move for an Order:

(a)   dismissing the claims asserted by plaintiffs Lingfeng Duan ("***Duan***"), Zhizhen Yin ("***Yin***"), Lili Zhang ("***Zhang***"), Ying Yu ("***Yu***"), Shuangquan Sun ("***Sun***"), Xiaofei Liu ("***Liu***"), Xuezheng Ding ("***Ding***") and Jiangman Chen ("***Chen***," together with Duan, Yin, Zhang, Yu, Sun, Liu and Ding, collectively, the "***Releasors***," and each individually, a "***Releasor***") for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because they expressly released all claims against the USIF Defendants in 2018;

(b)   dismissing the claims of plaintiff Xeujun Makhsous ("***Makhsous***") in Counts I-IV for lack of standing and failure to state a claim under Fed. R. Civ. P. 12(b)(1) and (6);

(c)   dismissing Makhsous' Count V, for tortious interference, for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or dismissing or staying all proceedings on that claim on the ground of "prior action pending"; and

(d)   dismissing or staying all proceedings on the claims of plaintiff Lixing Yan ("***Yan***") on the ground of "prior action pending" (a Court-ordered arbitration before the American Arbitration Association) or dismissing or staying all proceedings on, and compelling Yan to arbitrate, those claims under 9 U.S.C. §§ 2-4 (collectively, the "***Motion***").

## I.   PRELIMINARY STATEMENT

The Complaint (the "***Complaint***" or "***Compl.***") asserts *pro se* claims against the USIF Defendants by eight former EB-5 investors in 701 Fund, a current EB-5 investor in 702 Fund, and Makhsous—a nonlawyer, serial *pro se* litigant and self-described "EB-5 investor rights advocate" and "paralegal-in training," who was never an investor in 701 Fund or 702 Fund.  (Declaration of Richard G. Haddad ("***Haddad Decl.***") ¶ 4 & Ex. A ¶ 1).  The Complaint is obviously the handiwork of Makhsous, a non-attorney who is a frequent litigant on behalf of herself and others, who has recently served as "representative" for Yan in an arbitration and was harshly criticized by the arbitrator for misusing confidential documents produced by the USIF Defendants (yet nevertheless thereafter filed confidential documents in this case in violation of two arbitrators' express orders),

---

[1] The "***USIF Defendants***" are Nicholas A. Mastroianni II ("***Mastroianni***"), U.S. Immigration Fund, LLC ("***USIF***"), 701 TSQ 1000 Funding, LLC ("***701 Fund***"), 701 TSQ 1000 Funding GP, LLC ("***701 Manager***"), 1568 Broadway Funding 100, LLC ("***702 Fund***") and 1568 Broadway Funding 100 GP, LLC ("***702 Manager***").

has already had three *pro se* complaints dismissed by federal courts this year, and has been found to have made false claims and/or doctored documents twice since 2019.  (Compl., ECF No. 1, ¶¶ 6-14, 29; Haddad Decl. ¶¶ 5-11, 41-57, 59 & Exs. A-E, M-N & Q).

The Motion should be granted for the following reasons:

***First***, each Releasor expressly released all claims against the USIF Defendants in 2018 in exchange for the return of his or her $500,000 capital investment following successful completion of the real estate development funded by 701 Fund.

***Second***, the Court should dismiss Makhsous' claims under Counts I-IV of the Complaint— for fraud in the inducement, securities fraud, unjust enrichment and "Adhesion Contracts"— because those claims seek recovery on behalf of investors, but Makhsous was not an investor. Makhsous has not plausibly alleged that she received an assignment of the Releasors' claims, and, even if the Releasors assigned any rights to Makhsous, she has no claim against the USIF Defendants under Counts I-IV because she is bound by the releases executed by the Releasors.

***Third***, the Court should dismiss Makhsous' tortious interference claim in Count V because (a) she is pursuing an identical claim in her Second Amended Complaint in an action in the United States District Court for the Northern District of Illinois (the "***N.D. Ill. Court***") entitled *Makhsous v. Mastroianni*, No. 19-cv-01230 (N.D. Ill.) (the "***N.D. Ill. Action***"); (b) the Complaint fails to address the deficiencies identified by the N.D. Ill. Court when it dismissed the tortious interference claims in her Amended Complaint in the N.D. Ill. Action (the "***N.D. Ill. AC***"), *see Makhsous v. Mastroianni*, 2020 WL 1530740, at *4-5 (N.D. Ill. Mar. 31, 2020) (the "***N.D. Ill. Decision***"); and (c) *res judicata* bars any tortious interference claim against 701 Manager and 702 Manager.

***Fourth***, the Court should dismiss Yan's claims:  (a) on the ground of "prior action pending" because he has been arbitrating his claims for a year, and (b) because he agreed and was ordered

by the New York State Supreme Court to arbitrate his claims.  Alternatively, all proceedings on Yan's claims should be stayed.

## II.   FACTUAL BACKGROUND

### A.   The Allegations in the Complaint[2]

#### 1.   The EB-5 Immigrant Investor Program

The EB-5 program was created in 1990 by Congress to encourage the flow of capital into the U.S. economy and promote employment in the U.S.  Qualified foreign investors are offered the possibility of lawful permanent residence in the U.S. if they invest a minimum of $500,000 in a new commercial enterprise in the U.S., the investment results in 10 full-time jobs in the U.S. for American citizens, and the invested funds are at "risk."  *See* 8 U.S.C. § 1153(b)(5); USCIS Policy Manual, Volume 6, Part G, Ch. 1 §§ A, B.1 & Ch. 2.  (Compl. ¶ 24).

#### 2.   The Parties and the Relevant Transactions

##### a.   The USIF Defendants

701 Fund, 702 Fund, 701 Manager, 702 Manager and USIF are Delaware limited liability companies.  (Compl. ¶¶ 16-20).  701 Fund and 702 Fund are funds sponsored by an affiliate of USIF under the EB-5 program to provide financing for major real estate development projects at 1568 Broadway, New York, NY (702 Fund) and 701 Broadway, Times Square, New York, NY (701 Fund) (each individually, the "***Project***").  (Compl., ECF No. 1, ¶¶ 24, 27; Exs. A & B to Decl. of Nicholas A. Mastroianni II ("***Mastr. Decl.***") § 1 at "Project").  701 Manager and 702 Manager

---

[2]  The facts set forth herein are drawn from the allegations in the Complaint, the documents referred to therein, and documents the Court may take judicial notice of, all of which the Court may consider on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  In the USIF Defendants' experience, if they do not explicitly deny the allegations, Makhsous will publish on the internet and elsewhere that the claims were not denied and are thus admitted.  To be clear, the allegations in the Complaint are denied.

are, respectively, the managers of 701 Fund and 702 Fund.  (Mastr. Decl. Exs. A & B at 1).

Defendant Mastroianni, a Florida resident, allegedly "controls" and is the "controlling principal" of defendants USIF, 701 Fund, 701 Manager, 702 Fund and 702 Manager, and is the founder and chairman of USIF.  (Compl. ¶¶ 15-20; Mastr. Decl. ¶ 1).

### b. The Releasors

The Releasors are citizens and residents of the People's Republic of China and former investors in 701 Fund.  (Compl. ¶¶ 8-14, 29, 49, 50, 66).  Each Releasor "contributed [a] $500,000 investment to 701 Fund along with $50,000 in administrative fees between 2014 and 2015" under investment documents that included a "Subscription Agreement" (collectively, the "*Subscription Agreements*") and "paid about $12,000 to Qiaowai/GDOS [("*QG*"), a Chinese immigration consulting firm] for due diligence on 701 Fund."  (Compl. ¶¶ 21, 29; Mastr. Decl. Ex. C).  The Releasors and 701 Fund also executed an operating agreement (the "*701 Fund Operating Agreement*") permitting a member to withdraw from 701 Fund and receive his or her invested capital only at the discretion of 701 Manager.  (Mastr. Decl. Ex. A § 19).

Between July and September of 2018, each Releasor decided that he or she no longer wished to immigrate to the United States, "request[ed] withdrawal from 701 Fund," and "sign[ed] [a] 'Withdraw/Release Agreement'" (collectively, the "*Release Agreements*," and each individually, a "*Release Agreement*").  (Compl. ¶¶ 49, 50).  Each Release Agreement is a letter agreement executed by a Releasor and 701 Fund pursuant to which the Releasor withdrew as a member of 701 Fund and 701 Fund refunded his or her entire $500,000 "Capital Contribution" in 701 Fund.  (Mastr. Decl. ¶ 6 & Ex. E).  The $50,000 administrative fee was not refunded.  (Compl. ¶ 50; Mastr. Decl. Ex. E).  Each Release Agreement provides that the "Investor":

(a) has *voluntarily* submitted a request[] to withdraw his or her I-526 Petition to USCIS and *voluntarily* seeks to withdraw from the Company…;

4

(b) agrees that the Subscription Agreement shall terminate …;

(c) ***irrevocably and unconditionally releases and discharges the Company [701 Fund], U.S. Immigration Fund, LLC***, … and their predecessors, successors, subsidiaries, ***affiliates, officers, directors***, general partners, ***managers***, ***employees***, …, ***agents***, ***representatives*** and assigns, past, present or future (the "**Releasees**") from ***any and all claims, losses, liabilities, obligations, suits, debts, liens, contracts, agreements, promises, demands and damages, of any nature whatsoever***, … that the Investor ever had, now has, or hereafter may have, related to or arising out of the ***Subscription Agreement***, ***Operating Agreement***, Escrow Agreement and the ***related Project and Offering***; and

(d) ***confirms the return of his or her capital contribution in the amount of $500,000.00 constitutes full and final satisfaction of all sums due to the Investor from the Releasees.***

(Release Agreements, Mastr. Decl. Ex. E, at letter p. 1, emphasis added).

### c.  <u>Yan</u>

Yan is a citizen of the People's Republic of China and "an investor in 702 Fund." (Compl. ¶¶ 6, 30).  He "contributed $500,000 to 702 Fund along with $52,000 in administrative fees in 2016" and "paid about $12,000 to [QG] for due diligence on 702 Fund." (Compl. ¶ 30).

Yan and 702 Fund executed an operating agreement (the "***702 Fund Operating Agreement***") and a "Subscription Agreement" with respect to 702 Fund and his investment. (Mastr. Decl. Exs. B, D).  In Section 20(d) of the 702 Fund Operating Agreement, Yan agreed to arbitrate disputes in New York under the rules of the American Arbitration Association ("***AAA***").

### d.  <u>Makhsous</u>

Plaintiff Makhsous is a resident of Illinois, a nonlawyer, a serial *pro se* litigant, and a self-described "Chinese-English Translator and EB-5 researcher," "EB-5 investor rights advocate and a paralegal in-training," and "Moses of EB-5." (Compl. ¶ 5, ECF No. 1, ¶ 1; Haddad Decl. Ex. A ¶ 1 & Ex. B at 24).  She was never an investor in 701 Fund or 702 Fund and had no relationship with the USIF Defendants.  She allegedly "received assignment of certain interests of a current member of 701 [Fund]," which is not attached to or described in the Complaint, and baldly

identifies the Releasors as "[t]he assignor of certain rights to Plaintiff Ma."  (Compl. ¶¶ 5, 29).

### e.  Fieldstone

Defendant Ronald Fieldstone ("**Fieldstone**") is a partner in the law firm of Saul Ewing Arnstein & Lehr LLP and resides in Miami, Florida.  He previously represented certain of the Releasors.  (Compl. ¶¶ 22, 42-50).  Fieldstone is separately represented here.

### 3.  The Claims Asserted in the Complaint

The Complaint asserts five Counts.  All of the plaintiffs assert claims under Counts I-IV. Count I asserts a claim for fraud in the inducement, alleging that the Releasors' and Yan's original "investment[s]"—but not the Release Agreements—were induced by fraud.  (Compl. ¶¶ 62-66).

Count II asserts a claim for "Securities Fraud" alleging that the USIF Defendants made unspecified "material misrepresentations, engag[ed] in a fraudulent scheme, and breach[ed] their fiduciary duties to the Funds and their investors."  (Compl. ¶¶ 68, 69).

Count III asserts a claim for unjust enrichment alleging that Mastroianni, USIF, 701 Manager and 702 Manager received "millions of dollars in management fees … [w]ithout paying much distribution [sic] to members of 701 [F]und and 702 Fund" while "requir[ing] members of 701 Fund and 702 Fund to accept phantom income and federal tax liabilities."  (Compl. ¶¶ 73-74).

Count IV asserts a claim for "Adhesion Contracts" alleging that the 701 Fund Operating Agreement and the 702 Fund Operating Agreement (collectively, the "**Operating Agreements**") are "one-sided" because they "provide that Member has no right to withdraw or transfer without consent of Defendants Mastroianni" and that the Release Agreements are "one-sided" because they "provide[] that Plaintiffs received no interest[] on their investment nor refund of administrative fees when withdrawing" as a member in 701 Fund before maturity.  It is not clear under what legal theory Plaintiffs proceed with Count IV.  (Compl. ¶¶ 75-82).

In Count V, Makhsous, a nonlawyer, asserts a claim for "Tortious Interference with Prospective Business Relationship," alleging that in 2018 she was "approach[ed]" by "withdrawing investors" in 701 Fund "for translation, due diligence … and information on attorneys" and "sent retainer agreements of attorney [Douglas] Litowitz [with whom Makhsous had a business relationship] to a number of 701 [F]und withdrawing investors …," but that the USIF Defendants and Fieldstone interfered with her "prospective business relationship" with "many 701 Fund withdrawing investors" by "fil[ing] a frivolous lawsuit against Ma[khsous] and attorney Litowitz in New York Supreme Court" in October 2018 and later making unspecified "defamatory statements about Ma[khsous]."  (Compl. ¶¶ 51, 52, 54, 59, 60, 83-89).

### B.  Other Proceedings by Makhsous and Yan Against the USIF Defendants

This is not the first time that Makhsous and Yan have sued the USIF Defendants.  They are currently pursuing or have pursued the following proceedings against the USIF Defendants:

***The N.D. Ill. Action***:   On February 19, 2019, Makhsous filed a rambling *pro se* complaint asserting a litany of claims and perceived slights against the USIF Defendants and others.  After a motion to dismiss was filed, Makhsous filed the N.D. Ill. AC (even including claims against the USIF Defendants' counsel who had signed the motion to dismiss) and the USIF Defendants and their counsel moved to dismiss the N.D. Ill. AC.  Rather than defend the entirety of the N.D. Ill. AC, Makhsous withdrew most of the N.D. Ill. AC and asked the Court to rule on her tortious interference and defamation claims.  (Haddad Decl. ¶¶ 16-18 & Ex. F).

On March 31, 2020, the N.D. Ill. Court issued the N.D. Ill. Decision in which it dismissed Makhsous' remaining claims in the N.D. Ill. AC, for defamation and tortious interference, explaining that Makhsous "has not plausibly alleged that any Defendant engaged in conduct that constituted an intentional or unjustified interference with Plaintiff's business expectancy."  2020

WL 1530740, at *4-5.  The N.D. Ill. Court held that the dismissal was without prejudice, except that if Makhsous failed to file a second amended complaint by May 5, 2020, "the dismissal will be deemed with prejudice."  *Id.* at *8.  The N.D. Ill. Court cautioned Makhsous that she "would be well-advised to avoid pursuing claims that lack an adequate factual or legal basis.  Otherwise, she potentially risks being subjected to sanctions."  *Id.* at *5.

On May 5, 2020, Makhsous filed a Second Amended Complaint in the N.D. Ill. Action (the "***N.D. Ill. SAC***") asserting claims for defamation and "Tortious Interference with a Business Relationship" against 701 Fund, 702 Fund, Mastroianni, USIF and certain other defendants, but no claims against 701 Manager and 702 Manager.  (Haddad Decl. Ex. A).  701 Fund, 702 Fund, Mastroianni and USIF have filed a motion to dismiss the N.D. Ill. SAC, which has been fully briefed, but the N.D. Ill. Court has not yet ruled on that motion.  (Haddad Decl. ¶ 21).

***The Yan Action***:  On February 25, 2019, Yan, under the auspices of Makhsous and through a New York attorney, commenced an action against 702 Fund, 702 Manager, Mastroianni and USIF (collectively, the "***702 Fund Defendants***") asserting claims for breach of contract, breach of fiduciary duty, securities fraud, unjust enrichment and unclean hands (the "***Yan Action***"), and sought a TRO and a preliminary injunction against investment into the Project.  (Haddad Decl. ¶¶ 30-32, Ex. G, Ex. H & Ex. I ¶ 22).  The Yan Action came to an ignominious end for Yan with:  (a) his request for a TRO being denied, (b) Yan withdrawing his request for a preliminary injunction and entering into a stipulation with the 702 Fund Defendants in which he agreed "to commence arbitration to resolve any outstanding issues" (the "***Stipulation***"), (c) three and a half months later, Yan voluntarily dismissing the Yan Action, and (d) the New York judge considering a disciplinary referral regarding Yan's counsel's conduct.  (Haddad Decl. ¶¶ 33-40 & Exs. J, K & L).

***The Yan Arbitration***:  As required by the Stipulation and by the arbitration clause in the

8

702 Fund Operating Agreement, on or about May 17, 2019, Makhsous, as Yan's "representative," commenced an arbitration on behalf of Yan before the AAA (the "***Yan Arbitration***").  (Haddad Decl. ¶ 41).  In an Amended Statement of Claim dated July 11, 2019, Yan expanded the Yan Arbitration to include Mastroianni, 702 Fund, 702 Manager and another entity as respondents (collectively, the "***Arbitration Respondents***"), and to seek return of his $500,000 capital investment in 702 Fund and the $52,000 administrative fee he paid to 702 Fund, and recovery of $15,000 in attorneys' fees he paid to his immigration counsel, based upon claims for fraud in the inducement, securities fraud, unsuitability and malpractice under Section 10(b) of the Securities Exchange Act, "Adhesion Contract," breach of contract, breach of fiduciary duty and corporate waste, unjust enrichment, and "Right to Disclosure."  (Haddad Decl. ¶ 42).

Between May 2019 and May 2020, Yan, with Makhsous as his non-attorney "representative," arbitrated the Yan Arbitration with the Arbitration Respondents.  (Haddad Decl. ¶¶ 41-57).  In May 2020, after receiving three adverse rulings by two arbitrators on confidentiality issues—which Makhsous and Yan willfully violated by filing documents the arbitrators had ruled to be confidential in the N.D. Ill. Action and in this action—Yan stopped paying the AAA's fees (for the second time) and administration of the Yan Arbitration was suspended pending payment of the fees, but it remains pending.  (Haddad Decl. ¶¶ 43-59 & Exs. M-Q; Compl. at Exs. 2 & 3).

## III. <u>ARGUMENT</u>

### A. <u>The Standard on a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  On a motion to dismiss under Rule 12(b)(6), the Court considers the Complaint, the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc.*, 551 U.S. at 322.  "[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). "In this context, 'undisputed' means that the authenticity of the document is not challenged." *Id.*

B. **The Court Should Dismiss the Releasors' Claims.**

1. **The Releasors Released Their Claims Against the USIF Defendants.**

The Releasors assert claims under Counts I-IV of the Complaint, as does Makhsous as their purported assignee.  However, the Releasors executed the Release Agreements,[3] in which they released all of those claims.  Consequently, those claims should be dismissed.

The Release Agreements are governed by New York law.  (Mastr. Decl. Ex. E, at letter p. 2).  "Pursuant to New York law,… a release that is clear and unambiguous and which is knowingly and voluntarily entered into will be enforced."  *Laramee v. Jewish Guild for the Blind*, 72 F. Supp. 2d 357, 359 (S.D.N.Y. 1999).  *See also Mateo v. Carinha*, No. 14 CV 9020-LTS, 2019 WL 1409727, at *3 (S.D.N.Y. Mar. 28, 2019) ("Because the General Release is clear and unambiguous, … the Court cannot consider extrinsic evidence of the parties' intent and must enforce the release according to its terms."), *aff'd*, 799 Fed. App'x 51 (2d Cir. 2020).

---

[3] Because the Release Agreements, the Operating Agreements and the Subscription Agreements are referred to in the Complaint and are central to the Releasors' claims (*see* Compl., ¶¶ 39, 50, 62, 76, 80), and there is no dispute about their authenticity, they are admissible on the USIF Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), which should not be converted to a motion for summary judgment. *Tellabs*, 551 U.S. at 322; *Day*, 400 F.3d at 1276.  Importantly, the Operating Agreements and the Subscription Agreements are "investment documents" which are referred to in paragraphs 39 and 62 of the Complaint.  (Compl. ¶¶ 39, 62; Mastr. Decl. ¶¶ 3-5).

In the Release Agreements, in exchange for $500,000 paid to each Releasor (*i.e.*, a total of $4,000,000), the Releasors released all claims "related to or arising out of the Subscription Agreement[s], Operating Agreement, Escrow Agreement[s] and the related Project and Offering." (Mastr. Decl. Ex. E, at letter p. 1 ¶ (c)).  The 701 Fund Operating Agreement sets forth the Releasors' agreements with 701 Fund as to membership and investments in 701 Fund, management of 701 Fund, distributions to members, withdrawal of members, and any amounts due upon withdrawal.  (Mastr. Decl. Ex. A §§ 1, 7-19).

The claims asserted in Counts I through IV all seek relief "related to or arising out of the Subscription Agreement[s], Operating Agreement[s] …and the related Project and Offering":

- Counts I-IV seek as damages "investment and fees paid to Defendants Mastroianni…." Compl. ¶ 1).  The circumstances under which a member is entitled to repayment of his or her investment (*i.e.*, capital contribution) and/or administrative fee are covered by the Operating Agreements.  (Mastr Decl. Exs. A & B §§ 1, 7, 10, 13, 19).

- Count I asserts a claim for inducing the Releasors to "sign investment documents," which include the Operating and Subscription Agreements.  (Mastr. Decl., ¶¶ 3-5).

- Count II asserts a claim for securities fraud arising out of the "Offering," the "management of 701 Fund" (covered by the Operating Agreements), and the same alleged "scheme" as Count I.  (Compl. ¶¶ 67-69; Mastr. Decl. Exs. A & B § 8).

- Count III asserts a claim against the USIF Defendants for unjust enrichment for not "paying much distribution to members"—a subject covered by the Operating Agreements.  (Compl. ¶ 74; Mastr. Decl. Exs. A & B § 11).

- Count IV asserts a claim for "Adhesion Contracts" alleging that the Operating Agreements and the Release Agreements are "adhesion contracts."  (Compl. ¶ 76).

The Releasors released those claims against all of the USIF Defendants, including: (a) "the Company," *i.e.*, 701 Fund; (b) "the Company['s]" "manager[]," *i.e.*, 701 Manager; (c) the "affiliates" of the "Company," including 702 Fund and 702 Manager; (d) USIF; and (e) the "officers," "directors," "managers," "agents" and "representatives" of USIF and the Company, including Mastroianni. The Releasors also "confirm[ed] that the return of [their] capital

11

contribution in the amount of $500,000.00 constitutes full and final satisfaction of all sums due to the Investor from the Releasees." (Release Agreements, Mastr. Decl. Ex. E, at letter p. 1 ¶¶ (c), (d)). Thus, the Releasors unambiguously released the USIF Defendants from the claims in Counts I-IV. *Laramee*, 72 F. Supp. 2d at 359; *Mateo*, 2019 WL 1409727, at *3.

### 2.  <u>The Complaint Does Not Plausibly Allege that the Release Agreements Are Barred by Fraud or that They Are "Adhesion Contracts."</u>

The Complaint does not allege that the Release Agreements were induced by fraud. Count I, for "Fraud in the Inducement," does not cover the Release Agreements and instead alleges only that the Releasors "made investment[s] with Defendant Mastroianni with no right to withdraw or transfer without consent of Defendant Mastroianni." (Compl. ¶ 66).

The Complaint also asserts a claim for "Adhesion Contracts," alleging that the Operating Agreements and Release Agreements were "one-sided" "'standard-form contracts'" that were "not the product of arm's-length negotiation"; "[a]t the instruction of [QG], Plaintiff[s] signed the signature pages of ***investment documents*** issued by 701 Fund and 702 Fund without receiving the complete investment documents including … the operating agreement[s] …"; and "Mastroianni [and] Fieldstone coerced 701 Plaintiffs to sign Withdraw/Release Agreement drafted by Defendants Mastroianni to give up claims to $50,000 of administrative fee and interest[] earned." (Compl. ¶¶ 39, 50, 76-82, emphasis added). The Complaint fails to allege plausible facts indicating that ***the Release Agreements*** were contracts of adhesion or the result of any coercion because:

- the Release Agreements are short letter agreements written in plain English;

- the Releasors allege that they were "instruct[ed]" to sign "signature pages of investment documents," but fail to plead any facts indicating that there was any "pressure" to sign the Release Agreements, which were executed years later and in a transaction in which the Releasors were represented by counsel (Compl. ¶¶ 39, 42-50);

- there is no allegation that the Releasors executed stand-alone signature pages for the Release Agreements (Compl. ¶¶ 39, 75-82);

- each Releasor "***voluntarily*** withdr[ew] his or her I-526 Petition and ***voluntarily*** [sought] to withdraw from the Company" (Release Agreements, at letter p. 1 ¶ (a));

- 701 Fund returned the Releasors' $500,000 "Capital Contribution" (Compl. ¶ 50); and

- Fieldstone could not have coerced the Releasors into executing the Release Agreements because investors who were represented by Makhsous' preferred attorney, Doug Litowitz, also signed Release Agreements and received $500,000.00.  (Compl. ¶ 49).

The Releasors do not offer, or claim to have offered, to return any portion of the $500,000 they received under the Release Agreements.  The Releasors "cannot have it both ways:  enjoying the substantial monetary benefits that [701 Fund] agreed to give them as consideration for the releases, but then asking that they be excused from living up to their end of the bargain by honoring those releases."  *Wright v. Eastman Kodak Co.*, 445 F. Supp. 2d 314, 320 (W.D.N.Y. 2006). Accordingly, the Release Agreements bar the Releasors' claims.[4]

C.  **The Court Should Dismiss All of Makhsous' Claims.**

Makhsous is listed as a plaintiff on each Count.  The Court should dismiss each Count.

   1.  **Makhsous Cannot State a Claim under Counts I-IV.**

      a.  **Makhsous Lacks Standing to Assert Claims Under Counts I-IV Because She Was Not An Investor in 701 Fund or 702 Fund.**

As noted above, Counts I-IV assert claims seeking recovery on behalf of investors in 701 Fund and 702 Fund.  (Compl. ¶¶ 1, 66, 69, 74, 76).  Makhsous does not allege that she was an investor.  Consequently, she lacks standing to assert those claims.  *E.g.*, *Spokeo, Inc. v. Robins*,

---

[4] The Release Agreements also provide that "the payment and acceptance of the [$500,000 payment], and the releases as hereinbefore described … are in full accord and satisfaction of disputed claims the parties have or may have as [a] result of the Subscription Agreement … and the related Project and Offering and/or the investment in Company by the Investor."  (Release Agreements, at letter p. 2).  The Releasors' claims are barred by this accord and satisfaction. *Broyhill Furniture Indus., Inc. v. Hudson Furniture Galleries, LLC*, 61 A.D.3d 554, 555-56, 877 N.Y.S.2d 72, 74-75 (N.Y. App. Div. 1st Dep't 2009); N.Y. Gen. Oblig. L. § 15–501.

136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).

### b.   <u>Makhsous Has Not Plausibly Alleged An Assignment.</u>

Makhsous attempts to manufacture standing to assert claims under Counts I-IV by alleging, in conclusory fashion, that she "received assignment of certain interests of a current member of [701 Fund]" and identifying the Releasors as "[t]he assignor of certain rights to Plaintiff Ma[khsous] …." (Compl. ¶¶ 5, 29).  However, she does not state which Releasor(s) supposedly assigned their claims to her, the date of the assignment(s), or whether the assignment(s) were oral or written, or attach copies of any written assignment(s).  Her conclusory, "bare bones assignment allegations … are insufficient to permit the Court to infer the validity of the assignments." *MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co*, 2018 WL 295527, at *4 (S.D. Fla. Jan. 3, 2018).[5]

### c.   <u>Any Assignment to Makhsous Is Void Because It Was Champertous.</u>

"An agreement is champertous when 'a person without interest in another's litigation undertakes to carry on the litigation at his own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation.'" *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1372 (S.D. Fla. 1991) (citation omitted).  *See also Hardick v. Homol*, 795 So.2d 1107, 1109 (Fla. 5th DCA 2001).  Here, Makhsous baldly alleges that she took an assignment of a portion of the Releasors' claims on which she is suing the USIF Defendants. Makhsous obviously obtained any assignment under a champertous arrangement.  (*E.g.*, Complaint in *Long v. McAfee*, No. 1:19-cv-00898-DAD-SAB (E.D. Cal.), ECF No. 1, Haddad Decl. Ex. C,

---

[5] *See also MAO-MSO Recovery II, LLC v. Am. Family Mut. Ins. Co.*, 2018 WL 835160, at *6 (W.D. Wis. Feb. 12, 2018) (factual context of assignments required by *Twombly* and *Iqbal*); *Llano Fin. Grp., LLC v. Lendzion*, 2016 WL 930660, at *4 (N.D. Ill. Mar. 11, 2016) ("[Plaintiff] has failed to plead adequately with the clarity necessary to establish that it is actually the assignee of the claims it alleges ...."); *Methodist Hosp. of S. Cal. v. Blue Cross of Cal.*, 2010 WL 11508022, at *5 (C.D. Cal. Feb. 26, 2010) ("Hospital must establish some factual basis for the conclusion that it proceeds as an assignee ….").

¶¶ 1, 2, in which Makhsous litigated alongside a *pro se* EB-5 investor and claimed to have "received assignment of $49,000 in administrative fee and interests [sic] earned on the $500,000 investment from Plaintiff LONG for the translation and research work she performed for Wanting LONG between December 2017 and January 2019 as well as other considerations [sic]"). Champerty remains a valid affirmative defense under Florida law. *Hardick*, 795 So. 2d at 1109-10. If Makhsous received an assignment at all, that assignment is void as champertous.

### d. If There Was an Assignment, the Releasors Released Makhsous' Claims Under Counts I-IV Before Assigning Them.

Even if Makhsous received an assignment from the Releasors (Compl. ¶¶ 5, 29), she took that assignment subject to the USIF Defendants' defenses to the Releasors' claims, *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126, 325 N.E.2d 137, 139 (N.Y. 1975); *State v. Family Bank of Hallandale*, 667 So. 2d 257, 259 (Fla. 1st DCA 1995); *Madison Fund, Inc. v. Midland Glass Co.*, 1980 WL 332958, at *2 (Del. Super. Ct. Aug. 11, 1980), including the defense that the Releasors released their claims in the Release Agreements. *Ackoff-Ortega v. Windswept Pac. Entm't Co. (Inc.)*, 120 F. Supp. 2d 273, 284 (S.D.N.Y.), *on reconsideration*, 130 F. Supp. 2d 440 (S.D.N.Y. 2000), *aff'd*, 46 F. App'x 663 (2d Cir. 2002); *Sea-Land Serv., Inc. v. Remington Rand Corp.*, 1986 WL 8862, at *5 (S.D.N.Y. Aug. 7, 1986), *aff'd sub nom. Sealand Serv. Inc. v. Remington Rand Corp.,* 812 F.2d 713 (2d Cir. 1987). The Release Agreements expressly bind the Releasors' "successors" and "assigns." (Mastr. Decl. Ex. E, at letter p. 2). Accordingly, even if Makhsous is an assignee of the Releasors, the Release Agreements bar her claims in Counts I-IV.

### 2. The Court Should Dismiss Count V, for Tortious Interference.

### a. The Court Should Dismiss Count V Because Makhsous Continues to Assert the Same Claim in the Prior Pending N.D. Ill. Action.

"Trial courts are afforded broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal court." *I.A.*

15

*Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551–52 (11th Cir. 1986).  "[A]ccording to the doctrine of 'prior action pending,' '[t]he court has the inherent power to dismiss or stay [an] action in favor of [a] [prior] litigation presenting the same claims and issues.'"  *Carvel v. Newman*, 2010 WL 11504368, at *21 (S.D. Fla. Nov. 9, 2010) (recommending dismissal), *adopted,* Final Order of Dismissal, No. 09-cv-61815-WJZ (S.D. Fla. Mar. 28, 2011), ECF No. 28.  *See also Charles Alan Wright, et al.*, 5C Federal Practice and Procedure § 1360 (3d ed. 2020).  The doctrine can apply to individual claims.  *Lopez v. McGill*, 2009 WL 179787, at *3 (D. Conn. Jan. 21, 2009).

The N.D. Ill. Court dismissed Makhsous' tortious interference claims without prejudice. *Makhsous*, 2020 WL 1530740, at *4-5.  Makhsous then asserted a tortious interference claim against the USIF Defendants in the N.D. Ill. SAC and, months later, in the face of a pending motion to dismiss the N.D. Ill. SAC, she filed the same claim in this Court.  Both claims allege that the defendants had a "business relationship" with investors, the defendants interfered with that relationship by defaming Makhsous and filing an action in New York state court, "Defendants' interference caused injury to Plaintiff's relationship with her present and future clients," and "Defendants['] conduct was willful, wanton, malicious, and oppressive in their attempt to silencing [sic] Plaintiff."  (*Compare* N.D. Ill. SAC ¶¶ 43-53, 65-69 *with* Compl. ¶¶ 59-60, 84-88).  The Court should not permit Makhsous to harass the USIF Defendants by simultaneously suing them on the same claim in two courts.  Since a motion to dismiss Makhsous' prior pending and previously dismissed tortious interference claim in the N.D. Ill. Action has already been fully briefed, the Court should dismiss Count V.  Alternatively, the Court should stay all proceedings on Count V.

### b.  The Court Should Dismiss Count V for Failure to State a Claim.

In the N.D. Ill. AC, Makhsous asserted two claims for tortious interference that were virtually identical to Count V here.  The N.D. Ill. Court dismissed those claims.  *Makhsous*, 2020

WL 1530740, at *4-5.  For the same reasons, the Court should dismiss Count V here.[6]

In the N.D. Ill. AC, Makhsous claimed that the USIF Defendants "interfered with her expectancy of a business relationship with the exiting investors and injured her by causing 40 of the exiting investors to seek representation from Mastroianni and Ding's preferred attorney [Fieldstone]."  *Makhsous*, 2020 WL 1530740, at *4.  The N.D. Ill. Court dismissed Makhsous' tortious interference claims, concluding that "Plaintiff has not plausibly alleged that any Defendant engaged in conduct that constituted an intentional or unjustified interference with Plaintiff's business expectancy."  *Id*. at *5.  Makhsous relied on "Defendants' various defamatory statements and the initiation of the New York lawsuit" as the act of "unjustified interference."  *Id*. at *4-5.  The court held that because Makhsous "failed to plead that any Defendant made a defamatory statement…," defamation could not serve as the "intentional and unjustified interference."  *Id*. at *4.  The N.D. Ill. Court also explained that "filing a lawsuit [cannot] form the basis of a claim for intentional interference with prospective economic advantage."  *Id*. at *4.

The same logic applies equally here.  The Complaint alleges that "Defendants interfered with" Makhsous' "prospective business relationship with many 701 Fund withdrawing investors" and "[a]bout 40 of 701 Fund withdrawing investors signed engagement agreement[s] with Fieldstone including those who had received retainer agreements of attorney Litowitz through Ma[khsous]."  (Compl. ¶ 54, 84, 85).  The Complaint relies on defamation as the act of

---

[6] The N.D. Ill. Court described the elements of a claim for tortious interference in Illinois, where Makhsous resides, as follows:  "[T]he plaintiff must allege: '(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.'" *Makhsous*, 2020 WL 1530740, at *4 (citation omitted).  For purposes of the Motion, Florida law is not materially different.  *See Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009).

"interference," but alleges only that, "[i]n October 2018 Defendants Mastroianni filed a frivolous lawsuit against Ma[khsous] and attorney Litowitz in New York Supreme Court," and "later made [unspecified] defamatory statements about Ma[khsous] with sole intention to tarnish Ma[khsous'] reputation among EB-5 investors." (Compl. ¶¶ 59, 60, 85-87). Because the Complaint fails to specify any defamatory statements and the filing of a lawsuit cannot support a tortious interference claim, Count V should be dismissed. *Makhsous*, 2020 WL 1530740, at *4-5.

The Complaint is devoid of plausible allegations that the USIF Defendants advised anyone not to hire Makhsous, wrongfully interfered with Makhsous' ability to do business, or dissuaded anyone from doing business with her—a fatal pleading deficiency. *George A. Fuller Co. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1331 (7th Cir. 1983) (Illinois law requires "acts immediately directed at a third party which cause that party to breach its contract with the plaintiff."); *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 398 (Fla. 1st DCA 1992) (defendant must induce a breach). Makhsous has not even identified any potential "client" that chose not to hire her—nor could there be such a "client" because Makhsous is not a lawyer and cannot represent clients. *Makhsous*, 2020 WL 1530740, at *4-5. There is thus no pleading of any act of "intentional and unjustified interference," breach or termination of expectancy, or resulting damages. *Id.* at 4-5. Accordingly, Makhsous' tortious interference claim is not plausible and should be dismissed.

### c. **Makhsous' Tortious Interference Claims Against 701 Manager and 702 Manager Are Barred by *Res Judicata*.**

The N.D. Ill. Decision gave Makhsous "until May 5, 2020 to file a Second Amended Complaint that remedies the deficiencies discussed in this opinion," and ordered that, "[i]f she fails to file a Second Amended Complaint by that date, the dismissal will be deemed with prejudice." *Makhsous*, 2020 1530740, at *8. The N.D. Ill. SAC fails to assert any claim against 701 Manager or 702 Manager. Thus, the dismissal of Makhsous' tortious interference claims against them was

18

with prejudice and *res judicata* bars such claims against them here.  *Copeland v. Hous. Auth. of Hollywood*, 337 F. App'x 842, 843 (11th Cir. 2009) (dismissal with prejudice was *res judicata*).

### D.  The Court Should Dismiss Yan's Claims Against the USIF Defendants.

#### 1.  Yan's Court-Ordered, Prior Pending Arbitration Against the USIF Defendants Requires Dismissal of His Claims Here.

Under the Court's inherent power to manage its docket and the "prior action pending" (or "prior pending action") doctrine, a court may dismiss or stay an action based upon a prior pending arbitration. *Mathews v. Advised Assets Grp., LLC*, 2019 WL 4645503, at *1-2 (D. Mass. Sept. 24, 2019); *Dunne v. Doyle*, 2014 WL 3735287, at *5 (D. Conn. July 28, 2014).  Yan stipulated to commence, then commenced, the Yan Arbitration seeking, as here, the return of his $500,000 investment in 702 Fund and his $52,000 administrative fee, based upon claims including fraud in the inducement, securities fraud, "Adhesion Contract" and unjust enrichment, and arbitrated his claims against the 702 Fund Defendants for a year in an arbitration that remains pending, but the administration of which is currently suspended because Yan refused to pay the AAA's fees. (Haddad Decl. Ex. ¶¶ 33-34, 41-57 & Ex. J, K).  Because Yan is a party to a Court-ordered, prior pending arbitration seeking the same relief based upon the same claims as here, his claims here should be dismissed or stayed.

#### 2.  The Federal Arbitration Act Requires Dismissal of Yan's Claims.

The Federal Arbitration Act ("*FAA*") mandates that arbitration agreements "shall be valid, irrevocable, and enforceable," and provides that a district court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of [their] agreement."  9 U.S.C. §§ 2, 4.  The FAA permits a Court to stay an action with "any issue referable to arbitration."  9 U.S.C. § 3.  If there is already a pending arbitration, dismissal is appropriate.  *Ins. Co. of the State of Pa. v. Centex Homes*, 2014 WL 12577032, at *4 (S.D. Cal. Apr. 3, 2014).

19

"'[T]here are three factors for the court to consider in determining a party's right to arbitrate:  (1) [whether] a written agreement exists between the parties containing an arbitration clause; (2) [whether] an arbitrable issue exists; and (3) [whether] the right to arbitration has [] been waived.'"  *De Pombo v. IRINOX N. Am., Inc.*, 2020 WL 2526499, at *3 (S.D. Fla. May 18, 2020) (quoting *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004)).  "[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

These requirements are satisfied here:  (1) Yan agreed to arbitrate his claims by stipulating "to commence arbitration to resolve any outstanding issues."  (Haddad Decl. Exs. J, K & L).  In addition, Section 20(d) of the 702 Fund Operating Agreement requires Yan to arbitrate Counts I, III and IV because he agreed to arbitrate "[a]ny dispute, controversy or claim arising out of or in connection with, or relating to, this Agreement or any breach or alleged breach of this Agreement, except allegations of violations of … securities laws" (Mastr. Decl. Ex. B, § 20), and his claims "aris[e] out of or in connection with, or relat[e] to" the Operating Agreements.  Part III.B.1 *supra*.

(2)  Yan's claims are all arbitrable.  *E.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) (fraudulent inducement claims arbitrable); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) (fraud and unjust enrichment claims arbitrable); *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 483-85 (1989) (securities fraud claims arbitrable).

(3)  The Complaint does not allege that any of the USIF Defendants waived arbitration.

Accordingly, the Court should dismiss Yan's claims and compel him to arbitrate them.  In the alternative, the Court should stay all proceedings on his claims while that arbitration proceeds.

## IV.  **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

<u>**LOCAL RULE 7.1(a)(3) CERTIFICATION**</u>

Pursuant to Local Rule 7.1(a)(3), the USIF Defendants' attorneys certify that they have attempted to confer with plaintiffs Makhsous and Yan (both of whom are *pro se*) in a good faith effort to resolve the issues raised in the Motion and have been unable to do so because Makhsous and Yan did not respond to correspondence from counsel dated October 12, 2020.  Because the only relief the Motion seeks against the Releasors is dismissal of their claims under Fed. R. Civ. P. 12(b)(6), Local Rule 7.1(a)(3) does not require the USIF Defendants to confer with the Releasors.

<u>**REQUEST FOR HEARING**</u>

The USIF Defendants respectfully request that the Court set a hearing for the Motion pursuant to Local Rule 7.1(b)(2).  In light of the number of legal issues addressed by the Motion and the complexity of the history and related proceedings bearing on the Motion, the USIF Defendants believe that the parties and the Court would benefit from oral argument.  The USIF Defendants estimate a thirty (30) minute hearing for argument on this Motion.

Dated:  November 13, 2020

      Respectfully submitted,

AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL  33401
Tel.: (561) 653-5000
Fax: (561) 659-6313

*By: s/Eleni Kastrenakes Howard*
David P. Ackerman (FBN 374350)
david.ackerman@akerman.com
Eleni Kastrenakes Howard (FBN 0073073)
eleni.howard@akerman.com

- and -

21

Richard G. Haddad (*Pending Pro Hac Vice*)
rhaddad@otterbourg.com
Andrew S. Halpern (*Pending Pro Hac Vice*)
ahalpern@otterbourg.com
OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
Tel: (212) 661-9100
Fax: (212) 682-6104

*Attorneys for Defendants Nicholas A. Mastroianni II, U.S. Immigration Fund, LLC, 701 TSQ 1000 Funding, LLC, 701 TSQ 1000 Funding GP, LLC, 1568 Broadway Funding 100, LLC and 1568 Broadway Funding 100 GP, LLC*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this same day on all counsel and parties of record identified on the attached Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or via U.S. Mail for those parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/Eleni Kastrenakes Howard*
Eleni Kastrenakes Howard (FBN 0073073)

23

## SERVICE LIST

| | |
|---|---|
| **Xuejun Makhsous**<br>P.O. Box 2651<br>Glenview, IL 60025<br><br>*Plaintiff, Pro Se* | **Lixing Yan**<br>58 Chunyuan Road<br>No. 101, Flat 402<br>Pudong, Shanghai, China<br><br>*Plaintiff, Pro Se* |
| **Lingfeng Duan**<br>40 Mai Mai Street<br>Fragrant Hill Hotel<br>Haidian District<br>Beijing,                    China<br><br>*Plaintiff, Pro Se* | **Zhizhen Yin**<br>Room 702 Unit 2<br>Lane 206, Hengbing Rd<br>Hongkou District<br>Shanghai, China<br><br>*Plaintiff, Pro Se* |
| **Lili Zhang**<br>Luxin Changcun Garden<br>Unit 38-1-202<br>Yinchuan East Rd. No 1<br>Laoshan District, Qingdao<br>Shandong Province, China<br><br>*Plaintiff, Pro Se* | **Ying Yu**<br>Room 1501, Building 10<br>Younger Future City Shenhu Road<br>Industrial Park<br>Suzhou City 215021<br>China<br><br>*Plaintiff, Pro Se* |
| **Shuangquan Sun**<br>Unit 2-102, Building 13<br>Guiyuan Nanli Mou Division<br>Yizhuang Development Zone<br>Daxing District<br>Beijing, China<br><br>*Plaintiff, Pro Se* | **Xuezheng Ding**<br>No 3-3-201 Chunxiaoyuan<br>Feicuicheng, Xianlin Blvd.<br>Yuhang District<br>Hangzhou, Zhejiang<br>China<br><br>*Plaintiff, Pro Se* |
| **Xiaofei Liu**<br>Room 502, No. 23<br>667 Nong, Daning Rd.<br>Jingan District<br>Shanghai, China<br><br>*Plaintiff, Pro Se* | **Jiangman Chen**<br>Building 8, Unit 1401<br>Chengshi Shangu, Tonggu Road<br>Nanshan District, Shenzhen<br>Guangdong<br>China<br><br>*Plaintiff, Pro Se* |

24